Jones, J.
Section 26 of the corrupt practices act (102 O. L., 327), now Section 5175-26, General Code, provides that any person is guilty of a corrupt practice if he, in connection with or in respect of any election, contributes or offers to contribute any money or valuable consideration for any other purpose than those detailed therein. It provides further that any offer to contribute or expend any money or thing of value for any purpose whatever, except as therein provided, “is hereby declared to be corrupt practice and invalidates the election of any person guilty thereof.”
The acknowledged action of the plaintiff in error in connection with his campaign for common pleas judge of Henry county, in the distribution and cir *318 culation of the circulars in question, fell within the inhibition of that section of the corrupt practices act of this state.
In the event of his election to the office of common pleas judge the law had made express provision for a stipulated salary, part of which was' to be paid him by the state and part by the county. It is but little less reprehensible that, for the purpose of inducing election, he should promise to refund to the community as a whole that portion of the salary he should receive from the county than to offer to contribute to the taxpayers individually their pro tanto proportion of the amount of salary forgiven. In the latter event the taxpayer is required to pay less taxes, irrespective of the personal fitness of the candidate.
In The State, ex rel. Bill, v. Elting, 29 Kans., 397, a keen analysis of promises of this character, made for the purpose of inducing election, was made by Judge Brewer, afterwards a member of the supreme court of the United States. He said:
“The theory of popular government is that the most worthy should hold the offices. Personal fitness — and in that is included moral character, intellectual ability, social standing, habits of life, and political convictions — is the single test which the law will recognize. That which throws other considerations into the scale, and to that extent tends to weaken the power of personal fitness, should not be tolerated. It tends to turn away the thought of the voter from the one question which should be paramount in his mind when he deposits his ballot. It is in spirit at least, bribery, more insidious, and *319 therefore more dangerous, than the grosser form of directly offering money to the voter.”
There is a wide difference between a promise of this character and those multifarious pledges made by candidates in the interest of reform, economy and a rigid and effective administration of office in compliance with their official oaths. The latter are made in the public interest and are consistent with personal fitness; the former savors of vicious tendencies, involving a personal pecuniary consideration offered by the candidate in order to accomplish his election, in which the test of fitness is not an element.
At common law, practices involving the sale or purchase of public office were condemned as subversive of government and against public policy. Our legislation, in the interest of purity of elections, has stamped the common-law policy upon bur election laws. Promises of a character similar to those made by the plaintiff in error have been held in other jurisdictions to be an offense invalidating the election of the promisor. The State, ex rel., v. Elting, supra; Carrothers v. Russell, 53 Iowa, 346; State, ex rel. Newell, v. Purdy, 36 Wis., 213; Bush v. Head, 154 Cal., 277.
Owing to the severe penalties imposed by the act, inflicting punishment by way of fines and imprisonment, the forfeiture of office and invalidating the election of the person offending, the whole scope and intent of the act is to impose such penalties on those who wilfully commit the offenses named. If intention is absent, no offense has been committed. In the present case the plaintiff in error did wilfully *320 offend against the act, and rested his defense on the claim that he had a lawful right to do what he did.
. 2. It is insisted, however, by counsel for plaintiff in error that the “ground” set forth in the petition for contest is not of such character that may be invoked under the election contest statutes of our state.
Section 5137, General Code, provides for an appeal to the court of appeals from the decision of the convassing board “which finds and declares the result of the election.”
Section 5138, General Code, provides that the appeal shall be by petition, which shall set forth “upon what grounds the election is contested.”
Section 5143, General Code, provides that the courts shall determine the contest without the intervention of a jury, and may render such judgments and make such orders as the law and facts warrant, including judgment of ouster and induction.
It will be observed that the statutes of this state do not enumerate any specific grounds upon which a contest may be undertaken. Many of the states provide in detail the nature and character of the grounds upon which the contest may be based, but it is not so in this state. However, under the statutes noted, any grounds may be set forth in the petition which have the effect of determining the actual result-of the election, in order to determine who received the highest number of votes thereat.
While no provisions have been made in our law as to the specific grounds of contest, their character may be gleaned from those employed in the case of Howard v. Shields, 16 Ohio St., 184. The contest *321 act under consideration there (1 S. & C., 540, Sections 39-42), in its requirement to state the “points” of contest, was substantially similar to the one in this case, simply requiring generally the statement of the “grounds” of contest. And in regard to the nature of the “points” or “grounds” on which the contest was based, Judge Welch, page 188, said:
“We think the notice was sufficient. It contains all that the statute requires — notice that the election will be contested, and a specification of the ‘points’ relied upon. * * * The ‘points’ to be specified, are not required for the purpose of setting forth a ‘good case’ — not for the purpose of informing the contestee that the attack will be successful, but to advise him at what points the attack will be made, in order that he may fortify, and not be taken by surprise. * * * We think the points specified in this notice were stated with sufficient particularity and definiteness to subserve the object of the statute, which was, to limit the evidence of the contestor and to apprise the contestee of the general nature of the objections to be made, so as to enable him to meet them without unnecessary expense and labor.”
The rule is stated in the syllabus of The State, ex rel. Ingerson, v. Berry, 14 Ohio St., 315, that—
“A contest, on appeal to the court of common pleas, is the specific remedy provided by statute for the correction of all errors, frauds and mistakes which may occur in the process of ascertaining and declaring the public will as expressed through the ballot boxes.”
*322 The only adequate and specific remedy provided for -this purpose are the contest statutes. Neither quo warranto nor mandamus can ordinarily be invoked to determine the issue involved in contested election cases, for the reason that such issues involve the validity of the election and not the title to office. The State, ex rel. Grisell, v. Marlow, 15 Ohio St., 114; The State, ex rel. Wetmore, v. Stewart, 26 Ohio St., 216. It has been held, however, that if no adequate remedy is provided by law, quo warranto might be invoked in order to ascertain the legality or illegality of the election. The State, ex rel. Conrad, v. Patterson, 84 Ohio St., 89.
Section 5175-26, General Code, adds a specific ground upon which an election may be invalidated or contested. By the adoption of that section the legislature, in effect, determined that an offense committed against the corrupt practices act as enumerated therein was a ground for invalidating the election of the person committing the offense, irrespective of the proof usually -required showing that offers actually induced a sufficient number of voters to change their votes so as to affect the result. And since the question was raised in a case involving the election itself and not in a case wherein the title was involved after the induction into- office, the proper remedy available would be by contest proceedings under the statutes.
3. The plaintiff in error seeks to avoid the consequences of his offense by a claim that the salary acts are unconstitutional. He does not attack the constitutionality of the corrupt practices act itself. He cannot thus escape the punishment of an act *323 which is not made dependent on the validity of the salary acts.
“It is a firmly established principle of law that no one can be allowed to attack a statute as unconstitutional who has no interest in it and is not affected by its provisions.” 8 Cyc., 787.
A law is assumed to be valid until set aside. Only those directly interested may question its validity, and such are not here before the court as parties in interest for that determination. The breach of the corrupt practices act is made an offense, irrespective of the question whether the salary acts are valid or otherwise. The wrong sought to be corrected was one affecting the purity of elections, and the constitutional feature, if conceded, could not even remotely affect that question.
4. Finally, it is insisted that before the election can be invalidated or the office forfeited there must be a prior conviction of the offense committed under the corrupt practices act; and in that behalf counsel for plaintiff in error cite the case of The State, ex. rel. Attorney General, v. Ganson, 58 Ohio St., 313, wherein it is held:
“Where the causes of removal from office are prescribed by statute which also provides a special mode of procedure for such removal, the statutory remedy is the exclusive one, and quo warranto will not lie.”
Section 13323-1, General Code (formerly Section 32 of the corrupt practices act), provides that—
“Any person convicted of a corrupt practice under this act shall be fined * * * and if he shall *324 have been elected to office, he shall in addition thereto forfeit such office.”
Since this section of the statute has provided for punishment by fine and imprisonment and by forfeiture of , office in case of election, it is claimed that a special method is provided by the act itself by which such office should become vacant and that conviction by jury is a condition precedent to the 'forfeiture; and this seems to find support in Section 4 óf Article V of the Constitution, which provides :
“The general assembly shall have power to exclude from the privilege * * * of being eligible to office, any person convicted of bribery, perjury, or other infamous crime.”
An important distinction must' be noted between the case of The State, ex rel. Attorney General, v. Ganson, supra, and the instant case, and that distinction is found in the different functions imposed by the constitution upon the judicial and legislative departments of the state. One who has been inducted into office and convicted of bribery or other infamous crime forfeits his office under the aforesaid section, and as .a predicate to his removal he must first be tried ánd convicted by a jury. By reason of this trial the power is committed wholly to the judicial department; but it is otherwise where the election or election contest is concerned, for by other provisions of the constitution elections and election contests are not committed to the courts eo nomine as courts, but to such tribunal as the legislature may see fit to provide. By those provisions there has 'been granted to the legislature the sole *325 power to determine all matters incidental to the procedure and validity of elections.
Section 21 of Article II of the Constitution provides, “The general assembly shall determine, by law, * * * in what manner, the trial of contested elections shall be conducted,” and Section 27 of Article II of that instrument provides, “The election * * * of all officers * * * not otherwise provided for by this constitution, * * * shall be made in such manner as may be directed by law.”
Under these provisions of the constitution the legislature undoubtedly had the right to impose as a condition precedent to the validity of a candidate’s election, that he should not commit any of the offenses named in Section 5175-26, General Code, and that if the candidate did so offend his election would be invalidated. This in nowise conflicts with Section 32 of the act, because, on the one hand, the election is invalidated by a tribunal exercising quasi-judicial functions, which invalidation may be accomplished without either conviction or trial by jury. The election only is involved. On the other hand, the title to office, and not the election itself, is in question, and in such case, where .either bribery or other infamous crime has been committed, conviction must first be had before a forfeiture of office. In such cases judicial functions of the court are invoked. As emphasizing the distinction between the Ganson case and the present one, attention is called to the case of Mason v. The State, ex rel. McCoy, 58 Ohio St., 30. In that case, which is very analogous to this, Judge Spear, at page 52, used the following language:
*326 “A question much discussed is as to whether the statute should be treated as imposing a test of eligibility, or as providing a method of removal. The matter may be not free from doubt. Possibly the provision involves both characteristics. But the better conclusion, we think, is that the intent of the legislature was, not to provide a method by which a person lawfully elected to an office may be removed therefrom, but rather a method by which the title of one to an office which he has obtained possession of in violation of the terms of the statute upon which his claimed right vests, may be inquired into. It is, therefore, a challenge of the title to the office, resting upon charges of misconduct in procuring it, rather than a process to remove, resting upon charges of misconduct in office.”
This language is very pertinent to the case that we have. While there is little distinction between ■ the invalidation of an office, and the forfeiture of an office under the corrupt practices act, since both have the effect of divesting the candidate of his office, one rests upon the provision of misconduct in its procurement and the other rests upon offenses committed prior to or after the election and which are not involved in a contest proceeding.
However, it is easily assumed that if the legislature had intended to rely upon a prior conviction as a full and complete remedy for political misconduct, it would not have expressly provided for invalidation of office in a separate section of the same act, for forfeiture after conviction was specifically imposed in another section. Evidently the legisla *327 tive intention was to provide two distinct remedies —one affecting the election and the other the title to the office after induction.
We are, therefore, constrained to the view that the legislature has simply imposed upon the candidate a condition under which his election would be invalidated, and that, since no specific grounds are mentioned which are required to be stated and set forth in the contest petition, the commission of any of the offenses invalidating the election may be set forth in the petition and heard on appeal by the trial court, and judgment rendered and orders made as the law and facts warrant under the provision of our code relating to contests of election.
The refusal to induct the contestor was proper. The proceeding simply resulted in invalidating the election of the contestee. This did not invest the contestor with a majority of the legal votes cast. Renner v. Bennett, 21 Ohio St., 431; The State, ex rel. Clawson, v. Bell, 169 Ind., 61, 13 L. R. A., N. S., 1013.

Judgment affirmed.

Johnson, Donahue, Wanamaker and Newman, JJ., concur.
Matthias, J., not participating.