# Condron, Appellant, v. Pennsylvania Railroad Company.

*Appeals—Final decree in equity suit—Assignments of error—Interlocutory decree—Opinion of court—Findings of fact—Conclusions of law—Exceptions.*

1. No appeal can be taken in an equity suit involving the dismissal of a bill until the final decree dismissing the bill has actually been entered; and when such a decree has been entered, it must be assigned as error.

2. Assignments of error to the opinion of the court below are improper. It is the decree of the court which is assignable as error, and not the opinion.

3. A decree suggested by the trial judge dissolving a preliminary injunction on condition that the defendant should file a bond, is not a final decree, and a dismissal of exceptions thereto is therefore not assignable for error.

4. An assignment of error to the admission of the statement of certain facts will not be considered where there was no exception taken to the findings of facts, and the facts themselves are admitted in the assignment, and the real objection is to the conclusion of law reached by the court.

5. A mere general allegation in an assignment of error that the court below erred in its findings of fact, or conclusions of law, without setting forth the specific findings, or exceptions thereto, is improper and will not be considered.

*Equity—Injunction—Laches.*

6. A suitor who by laches has made it impossible for a court to enjoin his adversary without inflicting great injury upon him will be left to pursue his ordinary legal remedy. This rule is especially applicable where the object of the injunction is to restrain the completion or use of public works, and where the granting of the injunction would operate injuriously to the public as well as to the party against whom the injunction is sought.

7. Where a property owner stands by and sees a railroad company expend $50,000 on the faith of a borough ordinance authorizing the vacation of a street crossing, his laches will deprive him of relief by injunction regardless of what his original equities may have been.

Argued May 17, 1911.   Appeal, No. 182, Jan. T., 1910, by plaintiff, from decree of C. P. Blair Co., Equity Docket

D. No. 588, dismissing bill in equity in case of Joseph B. Condron v. The Pennsylvania Railroad Company. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ.    Affirmed.

Bill in equity for an injunction to restrain the vacation and abandonment of a crossing at Montgomery street in the borough of Hollidaysburg.

From the record it appeared that the plaintiff was the owner of a planing mill, lumber and coal yard south of the Montgomery street crossing.    On August 28, 1905, the borough council of Hollidaysburg passed an ordinance authorizing the vacation and abandonment of the crossing.    Plaintiff was a member of the borough council and voted against the ordinance.    All the other members voted in its favor.    There was evidence that the plaintiff stood by while the defendant company spent $50,000 in vacating the crossing and erecting an overhead bridge at the point in question.

The case was heard on bill, answer and proofs by BELL, P. J., who concluded his opinion in favor of defendant as follows:

A decree is therefore suggested dissolving the injunction heretofore granted, upon a condition that the Pennsylvania Railroad Company will file a bond in the sum of $6,000 conditioned for the payment to Joseph B. Condron of any damages which he may lawfully recover by reason of the vacation of said crossing at Montgomery street.

The prothonotary is directed to file this opinion, and enter a rule nisi in accordance with equity rules Nos. 63 and 64, and give notice to the attorneys for the respective parties.

No final decree was entered by Judge BELL.    An appeal, however, was taken, but the case was remitted by the Supreme Court back to the court of common pleas, so that a final decree might be entered.    In the meantime Judge BELL died, and thereafter a final decree was entered on May 5, 1910, by REED, P. J., specially presiding.

*Errors assigned* were in the following form: 1. The learned court below erred in refusing to affirm the plaintiff's first exception, said exception and the court's ruling thereon, being as follows:

The learned court erred in its findings of fact, as follows:

During the recent depression in business, freight traffic fell off greatly, but has partially revived, and is likely in the near future to equal, if not to exceed, the figures testified to by Mr. Smith.

2. The learned court below erred in refusing to affirm the plaintiff's second exception, said exception and the court's ruling thereon being as follows:

The learned court erred in its legal discussion and conclusion as follows:

But I am of the opinion that said act of assembly is in pari materia with other legislation regulating borough ordinances. We find that the Act of May 23, 1893, P. L. 113, sec. 3, provides in relation to the duties of chief burgess, as follows: "May veto Ordinances, etc. Every Ordinance and Resolution which shall be passed by said Council shall be presented to the Chief Burgess of such Borough. If he approve, he shall sign it, but if he shall not approve, he shall return it to said Council at the next regular meeting thereof, when said, objection shall be entered at large in the minute book, Council shall proceed to a re-consideration of such Ordinance or Resolution. If after such re-consideration, two-thirds of all the members elected to said Council, shall vote to pass such Ordinance or Resolution, it shall become and be of full force and effect, as if said Burgess had signed it." Third. This act of May 23, 1893, we think applies to the matter now in consideration. Two-thirds of the members elect did vote to pass the ordinance over the burgess veto. This being so, it became " of as full force and effect as if the said Chief Burgess had signed it." To give to the burgess the power contended for the plaintiff, would make him a veritable Czar. He could prevent a street being vacated by ordinance, even if every member of coun-

cil were in favor of such vacation. We will not adopt such a construction of the act of assembly unless driven to do so by words so unequivocal as to leave no doubt as to their meaning. But as we have said before, we think the act allowing the vacation of streets must be read in connection with said act of 1893, giving the councils a right to override the veto of the burgess, said two acts being in pari materia.

3. The learned court below erred in refusing to affirm the plaintiff's fourth exception, said exception and the court's ruling thereon being as follows:

The learned court erred in its legal conclusions, as follows:

Moreover, we think that Mr. Condron, at the time of the filing of this bill, was estopped from raising any question as to the invalidity of said ordinance of August 28, 1905. The councils of Hollidaysburg certainly would have been estopped. It was their duty, or the duty of their proper officers to see that this ordinance was properly advertised. They accepted from the Pennsylvania Railroad Company the fruits produced by the ordinance. The railroad company did just what it agreed to do—put up an overhead bridge at Jones street, at a large expense of money, and paid the borough the $10,000 provided for in the ordinance in question. It would be grossly inequitable after the borough had received the benefit produced by the ordinance to allow the council to repudiate, and does not the same rule as to estoppel prevail as to Mr. Condron? He knew of the ordinance of August 28, 1905, and its passage, because he was present when it was finally enacted and voted nay. He could not fail to see the railroad company erecting the overhead bridge at Jones street. Under such circumstances is he not estopped from now coming in and claiming the aid of a court of equity? Should he not have moved more promptly if he desired to take advantage of technicalities in regard to the passage of said ordinance of August 28, 1905?

4. The learned court below erred in refusing to affirm

the plaintiff's fifth exception. Said exception and the court's ruling thereon being as follows:

The court erred in its legal conclusions, as follows:

A decree is therefore suggested, dissolving the injunction heretofore granted, upon condition that the Pennsylvania Railroad Company will file a bond in the sum of $6,000, conditioned for the payment to Joseph B. Condron of any damages which he may lawfully recover by reason of the vacation of said crossing at Montgomery street.

*Robert W. Smith,* for appellant.

*J. D. Neff* and *J. D. Hicks,* of *Neff, Riley & Hicks,* for appellee.

OPINION BY MR. JUSTICE POTTER, October 9, 1911:

When this case was first called for argument in this court, it appeared that no final decree had been entered, dismissing the bill, and the record was therefore remitted to the court below for further hearing and the entry of a final decree. The case was then heard again before Judge REED presiding specially, who entered a final decree, in which he overruled the exceptions to the findings of fact and conclusions of law, and dissolved the injunction and dismissed the bill. As the case is now presented, it appears that the specifications of error are defective, in that the final decree of the court below is not assigned for error. Such an assignment is requisite: Clymer v. Roberts, 220 Pa. 162; Kenworthy v. Trust Co., 218 Pa. 286. We refused to hear argument when the case was brought here without a final decree; and now that such a decree has been entered, it has not been assigned for error. This leaves the case substantially as it was before in so far as the decree is concerned.

In the first specification, complaint is made that the court below erred in dismissing an exception to a finding of fact. This assignment is not pressed in the argument, and the matter to which it refers does not seem to be

material to the issue.   It does not seem to be warranted by anything in the evidence, but the finding could not have harmed appellant in any way.

In the second and third assignments, complaint is made of the dismissal of the exceptions to portions of the opinion of the court below; but it has been repeatedly pointed out that it is the decree of the court which is assignable as error, and not the opinion: Seltzer v. Boyer, 224 Pa. 369; Johnston's Estate, 222 Pa. 514; Fullerton's Estate, 146 Pa. 61.

The alleged error set forth in the fourth assignment is the dismissal of plaintiff's exceptions to the decree suggested by the trial judge, dissolving the preliminary injunction on condition that the defendant should file a bond.   This was not a final decree, and is therefore not assignable for error.   It was merely a suggestion of the trial judge of what he considered a proper requirement before the entry of a decree.

In the fifth assignment, it is alleged that the court below erred in the admission of a statement of certain facts. There was, however, no exception taken to the findings of facts, and in the assignment itself they are admitted; but it is denied that the legal effect given to them was proper.   It is apparent, therefore, that the objection here raised is to the conclusion of law reached by the court, rather than to the admission of the facts in question.

In the sixth assignment there is a general allegation that the court below erred in its findings of fact and conclusions of law.   But no findings of fact or conclusions of law, to which objection was made, are definitely set forth, nor does it appear that any exceptions were taken to the findings and conclusions.   In United Electric Co. v. East Pittsburg Boro., 230 Pa. 65, we pointed out (p. 70) that, "The assignments should be to the final action of the court upon exceptions to the rulings of the trial judge. Each assignment should show an exception filed and the disposition made of it by the court."   And in Conneaut Lake Ice Co. v. Quigley, 225 Pa. 605, it was held, as set

forth in the syllabus, "Assignments of error to findings of fact and law, although showing that exceptions were filed, are defective if the dismissal of the exceptions is not assigned for error."

In the seventh assignment of error complaint is made of the overruling of the exceptions of the plaintiff to the order of the court below made on May 5, 1910, and to the form of decree then suggested by the court. As we have already held that this order was not a final decree, to which an appeal would lie, it is not therefore properly to be made the subject of an assignment of error. Especially is this true, since a final decree was afterwards entered, after final hearing in the court below.

The only question here involved is as to the right of the plaintiff under the circumstances to claim the benefit of a remedy which is solely equitable in its nature. The court below was of opinion that the plaintiff by his conduct, had precluded himself from applying for relief through equity. Judge REED says, "The plaintiff stood by and saw the defendant expend $50,000 on the faith of the original ordinance in question, and he cannot now be heard to question its validity. He was a member of the body that enacted it, and the somewhat technical objection which he now raises to strike it down was as well known to him before the defendant had spent a dollar on the faith of the ordinance as it was at the time he filed this bill. He was silent then and the law will not permit him to speak now. In these circumstances the plaintiff's complaint does not come within the province of equitable relief."

Without anticipating in any way the consideration of the legality of the ordinances involved, as that may be properly raised by the plaintiff in an action at law, we are of opinion that upon the ground of laches by the plaintiff, the injunction asked for in this case was properly refused. The court below, probably through inadvertence, spoke of plaintiff as being estopped. But the doctrine of estoppel can hardly apply here, for the reason that the

defendant company had the same opportunity to know the facts with regard to the passage of the ordinance as the plaintiff had. It was not deceived in that respect. In Woods v. Wilson, 37 Pa. 379, Mr. Justice Thompson said (p. 384) that the law of estoppel operates "only in favor of those who, after the exercise of diligence, are still ignorant of an opposing title, and against those who, aware of their own title and knowing it to be secret, are silent. When both parties are aware of their respective rights, it has no place in law or equity." But the inexcusable delay of the plaintiff, in asserting his rights, is another matter, and the consequent injury and prejudice to the defendant company, in permitting it to expend large sums in reliance upon its contract with the borough council, may well be held to bar his right to recover in a court of equity.

In 2 Pomeroy on Equity Jurisprudence (3d ed., 1905), sec. 817, it is said: "Acquiescence in the wrongful conduct of another by which one's rights are invaded may often operate, upon the principles of and in analogy to estoppel, to preclude the injured party from obtaining many distinctively equitable remedies to which he would otherwise be entitled. This form of quasi estoppel does not cut off the party's title, nor his remedy at law; it simply bars his right to equitable relief, and leaves him to his legal actions alone. . . . The equitable remedy to which this quasi estoppel by acquiescence most frequently applies is that of injunction, preliminary or final, when sought by a proprietor to restrain a defendant from interference with easements, from committing nuisances, from trespasses, or other like acts in derogation of the plaintiff's proprietary rights." In 1 High on Injunctions (4th ed., 1905), sec. 643, it is said, "As in all cases of the exercise of the strong arm of equity by injunction, the right to the relief may be lost by one's own negligence and delay in seeking protection." As an instance of the application of the rule, the author says (sec. 618): "Where a property owner, who seeks to enjoin a railway company from using its tracks upon a

street in front of his premises, has permitted the company
to expend large sums of money in the construction of its
track, and has acquiesced in their use for a considerable
number of years without objection or complaint, such
acquiescence will deprive him of relief by injunction re-
gardless of what his original equities may have been."

The general principle is thus stated in 16 Am. & Eng.
Ency. Law (2d ed.), 356: "A suitor who by laches has made
it impossible for a court to enjoin his adversary without
inflicting great injury upon him, will be left to pursue
his ordinary legal remedy. This rule is especially ap-
plicable where the object of the injunction is to restrain
the completion or use of public works, and where the grant-
ing of the injunction would operate injuriously to the
public as well as to the party against whom the injunction
is sought.

In the present case there can be no question but that
the interest and safety of the public require that such a
dangerous grade crossing over so many tracks, should be
abolished. As Mr. Justice DEAN said in Penna. R. R.
Co. v. Bogert, 209 Pa. 589 (p. 598): "The policy of the
commonwealth and this court with reference to grade
crossings has been frequently and in no uncertain terms
announced. It is, that the murderous grade crossing
must go."

Under the well-established principles of equity juris-
prudence, as above noted, we think the court below was
justified in refusing an injunction and in leaving appellant
to his remedy at law. The assignments of error are all
dismissed, and the decree of the court below is affirmed.