SIMMONS, ET AL. *v.* WOODWARD, ET AL.
[No. 27,352. Filed March 25, 1940.]

16

*Amorine M. Wilson* and *Lewis E. Chowning,* both of Sullivan, for appellants.

*J. Hurley Drake* and *Lee Bays,* both of Sullivan; and *Rawley & Stewart,* of Brazil, for appellees.

FANSLER, J.—The appellants brought this action to enjoin the collection of certain taxes which had been placed on the tax duplicate by the Auditor of Sullivan County, pursuant to the order and mandate of the Sullivan Circuit Court entered in an action in which the State of Indiana on the Relation of the School City of Sullivan was plaintiff and the Auditor of Sullivan County was defendant. A demurrer to the complaint was sustained, the appellants refused to plead further, and judgment was rendered against them, from which they have appealed, assigning error upon the ruling on the demurrer.

The complaint alleges that the plaintiffs are property owners and taxpayers in the City of Sullivan; that in the year 1932 the School City of Sullivan, acting through its proper officers, levied a certain tax rate for the payment of certain bonded obligations and for the maintenance and operation of the schools; that, pursuant to chapter 10 of the Acts of the Special Session of the Legislature in the year 1932 (Acts 1932, p. 17), a county board of tax adjustment was appointed in Sullivan County; that the tax levy was submitted to such board, and an order was made by the board reducing the tax levy, which reduced levy was certified by the auditor to the State Board of Tax Commissioners; that thereafter an action was brought in the name of the State on the Relation of the Board of School Trustees against the Auditor, in the Sullivan Circuit Court, in which it was asserted, among other things, that the statute of 1932, providing for a county board of tax adjustment, was unconstitutional and void, and seeking a mandate against the auditor to require her

to spread upon the tax duplicate taxes at the rate established and certified to her by the school city; that the auditor appeared to this action, and issues were formed, and the proceeding resulted in a judgment against the auditor, mandating her to spread the tax levy as prayed by the school city. This judgment was not appealed from, and the taxes were spread upon the tax duplicate accordingly. The statute of 1932 was amended at the regular session of the Legislature of 1933 in such a manner as to avoid many of the objections made to it in the action referred to. It is alleged in the plaintiffs' complaint that plaintiffs have paid the amount of taxes for school city purposes determined by the county board of tax adjustment. They allege that the Sullivan Circuit Court had no jurisdiction to render the judgment mandating the auditor to spread the rate fixed by the school city officers upon the tax duplicate, and that the judgment is void; that if the judgment is not void, it does not bind them as taxpayers, since they were not parties to the judgment. They further assert that the statute of 1932 was in all things valid, binding, and constitutional; that all taxes spread upon the duplicate in excess of the amount fixed by the county board of tax adjustment are invalid and void. They allege that the treasurer is for the first time threatening to sell their property for the nonpayment of the excess portion of the tax. There is prayer for judgment enjoining the collection.

The appellants contend that in the former case the action of the county board of tax adjustment could only be attacked upon the ground of fraud or bad faith, and that therefore, under the facts pleaded in the original complaint, the Sullivan Circuit Court had no jurisdiction of the subject-matter of the action, and that its judgment is void. *Murray*

v. *Zook* (1933), 205 Ind. 669, 187 N. E. 890, and *Payne et al.* v. *Grossart, Auditor* (1934), 207 Ind. 157, 190 N. E. 752, are relied upon to sustain the appellants' position. These cases do not hold that the court was without jurisdiction to consider a complaint to enjoin based upon any other ground than fraud or bad faith upon the part of the county board of tax adjustment. It was assumed in those cases that the county board was constitutionally constituted and had full power to act in the premises. Under such circumstances, in a so-called appeal, which is really an orginal action, questioning the action of the board, any illegality may be considered, and the court before which the action is pending, being a court of general jurisdiction, has full power and jurisdiction to determine whether there was any illegality. In the case here involved it was asserted that the law under which the board was established was unconstitutional, and that the board had no power to act, and that therefore its action was illegal and void. The circuit court clearly had the power to determine this question. It was presented by the complaint and the demurrer, and the action of the board seems to have been enjoined upon the ground of unconstitutionality. The judgment was unappealed from, and therefore, as to all of those who are bound by the judgment, it is conclusive.

It is also contended that if the Sullivan Circuit Court had jurisdiction to render the judgment, it does not bar the plaintiffs' action, for the reason that the county board of tax adjustment was not a party to the original action. The action was in the name of the State. Its purpose was to mandate the county auditor to enter the tax rate on the tax duplicate. It sought no action by the county board of tax adjustment, and no relief against the board. The board was a mere tribunal,

if it legally existed at all, with no interest in the subject-matter.

It is contended that the auditor, the defendant in the prior action, was not a representative of the taxpayers, and that the judgment against her does not bind the taxpayers. The authorities cited in the appellants' brief do not in the least support this contention.

The authorities are almost unanimous in holding that, in the absence of a showing of fraud or collusion, a judgment against an officer of a local government, respecting matters which are of general and public interest, entered in an action where there was a bona fide controversy, is binding and conclusive upon all residents, citizens, and taxpayers of the local government. 34 Corpus Juris, § 1459, pp. 1028, 1029; Freeman on Judgments, 5th Ed., Vol. 1, § 507 et seq., p. 1089. The rule rests upon sound reason. Obviously it would be impossible, or at least impractical, to make every taxpayer in the community a party. It is necessary therefore that some representative of the individual taxpayers be made a party. Nothing is more reasonable than that their official representative, charged with the responsibility of legally doing, or refraining from doing, the thing involved, should represent them. In the case in question the action was in the name of the sovereign state, which acts for the sovereign people, and it was asserted and adjudged that it was the officer's duty to the sovereign to do the thing which was mandated. If such a judgment, in the name of the sovereign state, adjudging a tax to be legal, and mandating the auditor to spread it upon the tax duplicate, is not binding upon the taxpayers, it binds no one. But such a procedure has always been recognized as a proper and adequate one

for the purpose of determining the duty of an officer and compelling him to act. The sole authority to the contrary which has come to our attention is *Price* v. *Gwin, Sheriff, et al.* (1896), 144 Ind. 105, 107, 43 N. E. 5, 6, in which it was held that a judgment, in an action brought by the county commissioners against the sheriff to enjoin him from tearing down and rebuilding a court house under an order of court, was not binding upon a taxpayer of the county "because he was not a party to it." No fraud, or collusion, or lack of bona fides was asserted, and no reason for the ruling was given. Five Indiana cases are cited, presumably as supporting the ruling, but they do not support it, either by analogy or reasoning, as an examination will clearly disclose. The annotator of Corpus Juris, on the pages above cited, points out that the decision failed to note the distinction between judgments involving public rights and those involving private rights. The case is not noticed, but is overruled by implication by *State ex rel. Piel* v. *Arkansas Construction Co. et al.* (1929), 201 Ind. 259, 167 N. E. 526, in which it was held that a judgment releasing a contractor from a public improvement bond, taken in an action filed originally before the board of county commissioners and appealed to the circuit court, was conclusive against the taxpayers of the taxing unit, notwithstanding no taxpayer was made a party. This latter case and the general rule are supported by sound reason and authority. The case of *Price* v. *Gwin, Sheriff, et al., supra,* is hereby expressly overruled. In the case at bar there is no allegation of fraud, or collusion, or lack of bona fides in the procuring of the judgment mandating the auditor to spread the tax rate levied by the school board upon the tax duplicate. The judgment therefore is binding upon the appellants and upon all of the taxpayers of the

City of Sullivan, and for that reason alone the demurrer to appellants' complaint was properly sustained.

But if the appellants were not barred by the judgment against the auditor, the situation of the parties is hardly such as to commend their case to a court of conscience. Four years elapsed before this suit was brought. Judicial knowledge must be taken of the fact that taxes for school cities are levied annually, and that they become delinquent after the first Monday in May of the year following that for which they are levied. It can be assumed that the taxpayers of the City of Sullivan generally paid the tax in question, and that, upon the basis of collections for each year, levies were made and approved for subsequent years, and that these have been paid, and that the levy made for the year 1933, payable in 1934, and for the succeeding years, was made upon the assumption that the taxes charged against these appellants, though delinquent, would be paid. It appears from the complaint that at the time the tax in question was levied, the School City of Sullivan was in debt; that the debt was represented by bonds outstanding; that funds were necessary to maintain and operate the school system committed to the charge of the school board. It must be assumed that the schools were operated as required by law, and that the debts of the school city were paid, or are still unpaid and will require payment. The school system is supported by taxation, upon the theory that the schools are a benefit to the community and to the taxable property of the community. The appellants did not by their complaint assert any right peculiar to them as distinguished from other taxpayers of the community, nor did they assert any reason why their property, as distinguished from the property of all the remainder of the taxpayers, should be free from

this tax. Under the law taxes are ratably distributed, and it is not contended by the appellants that the levy complained of discriminated against them or cast any more burden upon their property than upon property generally in the community. All of the tax was for school purposes. The higher tax necessarily resulted either in a more prompt payment of the school debt, the avoidance of a deficit for the school year, or a more expensive, and, it may be assumed, more adequate school service. If the service was more adequate, though perhaps more expensive than the taxpayers might have desired, the community had the benefit, and the appellants therefore benefited with the other taxpayers. If the school debt was reduced more than it would have been on a smaller levy, less revenue was required for succeeding years, from which the appellants benefited alike with all other taxpayers. If a deficit was avoided it must have resulted in lower taxes for succeeding years, a benefit to the appellants equally with other taxpayers. If the appellants are excused from the payment of their share of the tax in question, it will result in a greater burden upon the other taxpayers, and a lesser burden upon the appellants, for equal benefits. What the appellants are seeking in this action is not a just and equitable ratable distribution of the school burden of the city, as between themselves and the other taxpayers, but an advantage to themselves by being excused from the payment of a tax that the other taxpayers have paid. To accomplish this purpose, and to secure this advantage over the other taxpayers, they have sought the intervention of a court of equity. The cases which deal with enjoining taxes are so numerous that it is impossible to review them all, but in most it will appear that the relief is claimed upon some ground peculiar to the particular taxpayer who is complaining.

It is often asserted that the particular property was not subject to tax, or that it was assessed or valued in some illegal manner, which creates not only an unlawful, but an unjust and unequitable burden. But there is no such situation here. If the portion of the tax complained of is illegal, it is illegal with respect to every taxpayer, and the other taxpayers have paid it. The true controversy thus appears to be between the appellants and the other taxpayers of the community—whether the appellants shall pay less than their ratable share for the support of the schools, or whether they shall pay the same without regard to whether the particular assessment which has been paid by the others was legally or illegally fixed as to amount. It is difficult to see an injustice to the appellants if they are required to pay the tax, and it is clear that to enjoin it casts an unequal burden and an injustice upon the taxpayers who have paid. It is clear that in this case the rule that taxpayers are bound by the judgment against the auditor accomplishes a result consistent with the maxim that "equality is equity."

There is another matter that should be noticed, although it is not necessary to a determination of the case. In answer to the contention that they were guilty of laches, the appellants say that their action did not mature and could not be maintained until there was a threat to sell their property to pay the tax. They rely upon *Smith, Auditor,* v. *Smith et al.* (1902), 159 Ind. 388, 389, 65 N. E. 183. In that case the suit was to enjoin an assessment as illegal in respect to the particular property of the plaintiffs and did not affect other taxpayers. It was pointed out that equity hesitates to interfere with the orderly process of taxation, and that an injunction should not

be granted where it would delay the making up of the tax duplicate and its delivery to the treasurer, since the plaintiffs could be amply protected by an action when there was a threat to sell their property for the tax. It is pointed out that a court of equity will exercise its preventive power only at that time when it will result in a minimum amount of prejudice to the public. The case is well reasoned. It well expresses the reluctance with which courts of equity will interfere with the levy and collection of taxes so necessary to the maintenance of the government. It announces the rule, "that it is required that there shall be some ground for equitable interference aside from the mere illegality of the tax to justify the interposition of equity." This rule might well be urged in the case at bar, where the equities require that the appellants bear the same burden as the other taxpayers, and where the appellants are asserting naked illegality without attempting to show any injustice as between them and the other taxpayers of the community. The Smith case is sound upon the facts there presented, but, as pointed out in *Gray, Auditor, et al.* v. *Foster et al.* (1910), 46 Ind. App. 149, 92 N. E. 7, the rule that the action was premature until there was a threat to sell the land was not intended to apply to cases involving the rights of taxpayers generally. Equity acts specifically, and will insist upon acting at such a time as will afford relief with the least inconvenience or injury to others. It would be unsafe to attempt an invariable rule as to the time at which equity may be appealed to for relief. It is of the very nature of the jurisdiction of equity that it will only intervene to interfere with governmental process when it is shown to be necessary to the protection of equitable rights, but that he who seeks the aid

of equity must not stand by until relief will result in injury to others or to the public that might have been avoided by an earlier interposition.

We find no error.

Judgment affirmed.

NOTE: Reported in 26 N. E. (2d) 37.