FRANK J. TUSSO and DOROTHY H. TUSSO, on behalf of themselves and others similarly situated,
Plaintiffs,

*vs.*

J. GORDON SMITH, BENJAMIN F. SHAW, II, BENJAMIN ABELMAN, THURMAN G. ADAMS, J. DRAPER BROWN, DALLAS D. CULVER, SAMUEL F. FOX, FRANK R. GRIER, EDWARD KELLY, WILLIAM P. RICHARDSON, HUGH R. SHARP, JR., and ROBERT D. THOMPSON, constituting State Highway Department of State of Delaware, and RICHARD A. HABER, Chief Engineer and Mayor and Counsel of Wilmington, a municipal corporation of the State of Delaware, Defendants.

*New Castle, December 15, 1959.*

*Thomas Herlihy, Jr.,* and *Hiram W. Warder,* Wilmington, for plaintiffs.

*S. Samuel Arsht* and *Harvey S. Kronfeld* of Morris, Nichols, Arsht & Tunnell, Wilmington, for individual defendants.

*Stewart Lynch,* City Sol., Wilmington, for defendant, Mayor and Council of Wilmington.

MARVEL, Vice Chancellor: Plaintiffs, who own a home in the vicinity of Adams and Jackson Streets in Wilmington, Delaware, bring this action not only as qualified voters, freeholders and taxpayers but as members of a so-called Taxpayers' Protective Association made up of residents of the Adams-Jackson Streets area who are opposed to the construction by the State Highway Department of a proposed freeway through that section of the City of Wilmington. They sue on behalf of themselves, "* * * and for other persons similarly situated as taxpayers, freeholders, residents and qualified voters of * * * Wil-

mington * * *," and seek injunctive relief against the further expenditure of public funds for the planning and construction of a controlled-access facility known as FAI-2 (see *Piekarski v. Smith, Sup.Ct.Del.,* 153 *A.2d* 587) on the basic grounds[1] that the so-called Delaware Controlled-Access Highways Act, being sub-chapter V of Chapter I, Title 17, Del.C., which authorizes such freeways, is a special or local law pertaining to the laying out of roads, adopted in violation of § 19 of Article II of the Constitution of the State of Delaware, Del.C.Ann. Section 19 provides in part:

"*§ 19 Local or special laws relating to fences, live stock, ditches, school districts, and roads, highways, streets, etc.*

"Section 19. The General Assembly shall not pass any local or special law relating to * * * the laying out, opening, alteration, maintenance or vacation, in whole or in part of any road, highway, street, lane or alley * * *."

■ This section, as is apparent not only from its title but as clearly established by judicial interpretation, is concerned with special laws relating not only to the other subjects listed in the title of the act but also to roads (*Smith v. Baltimore & Ohio R. Co., 7 Terry* 441, 85 *A.2d* 73, and *State ex rel. Morford v. Emerson,* 1 *Terry* 328, 10 *A.2d* 515; compare *Clendaniel v. Conrad,* 3 *Boyce* 549, 83 *A.* 1036 and *Wright v. Husbands,* 36 *Del.Ch.* 416, 131 *A.2d* 322, 331), and the 1913 constitutional amendment to the section which authorized the General Assembly by a vote of two-thirds of all the members elected to each House to pass laws relating to the "* * * laying out, opening, alteration or maintenance of any road or highway which forms a continuous road or highway extending through at least a portion of the three counties of the State * * *" did not affect the power of the Legislature to pass general as opposed to special laws with reference to roads or highways, *State ex rel. Morford v. Emerson, supra.*

---

1. Plaintiffs also claim that subchapter V of Chapter I, *Title 17 Del.C.,* being invalid, there is no common law basis for the taking of lands (such as plaintiffs') not actually needed for the right of way proper of FAI-2, the taking of rights of abutting owners, the closing of streets, and regulation of the type of vehicles to be driven on the proposed freeway.

Plaintiffs' argument in essence is that § 180 of subchapter V of Title 17, Del.C. having expressly provided that "* * * The authority granted to the Department in the subchapter shall be restricted to New Castle County * * *," and it additionally appearing that the Controlled-Access Highways Act failed to receive a two-thirds vote[2] in both Houses of the Legislature (an allegation which must be taken as true for the purposes of deciding defendants' motion to dismiss) such motion must be denied because the FAI-2 project is clearly based on a special or local law which fails to meet the constitutional requirements for such laws set forth in § 19 of Article II of the Delaware Constitution.

In addition to moving to dismiss,[3] the individual defendants have moved for summary judgment on the grounds of res adjudicata and laches.

Turning first to res adjudicata, it is the contention of the State Highway Department in advancing this defense that the order of the Supreme Court of Delaware, entered on August 13, 1959, in conformity with its opinion of July 28, 1959, in the case of Piekarski v. Smith, supra, an action brought by residents of the Adams-Jackson Streets area suing "* * * on behalf of themselves and for persons similarly situated as taxpayers, freeholders and qualified voters of * * * Wilmington * * *" is a bar to the present class action, which allegedly makes the same claim, namely, that action of the defendants in proceeding to build FAI-2 under the purported authority of subchapter V of Chapter I, Title 17, Del.C. is illegal. It is argued that there having been a failure to establish the illegality of such project in the Piekarski action, the present plaintiffs, who, as taxpayers are in privity with the plaintiffs in the earlier action, are estopped by the judgment entered in such action to arise here different reasons why the planning and construction of such project should be enjoined as illegal.

---

2. The Highway Commission at argument conceded such allegation to be a fact.

3. The defendant, The Mayor and Council of Wilmington, has also moved to dismiss plaintiffs' claim as to it (a charge concerning Council's allegedly invalid consent of June 28, 1957) it having been established that such consent to FAI-2 was not required, Piekarski v. Smith, supra. It will be dismissed on this narrow ground.

Res adjudicata has been stated to be the conclusive effect of an existing final judgment rendered on the merits without fraud or collusion by a court of competent jurisdiction upon the parties and their privies, as to all rights, questions and facts there in issue, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction, Vol. 30A, American Jurisprudence, Judgments, § 324. And while this desirable doctrine would appear to be subject to being called into play as a routine matter for the beneficial purpose of putting litigation finally to rest when parties and their privies have had their day in court as to a particular claim and its defense, the reports are replete with cases in which the defense of res adjudicata has not been permitted to act as a bar to new ligation where the cause of action in the second case is not the same, although both actions relate to the same subject matter. On the other hand, a judgment may act as an estoppel where, despite differences in the grounds of the two actions the cause of action in each is the same, it being stated that if the same facts would sustain both the first and second actions, the two are considered the same for the purpose of applying res adjudicata, *Bittner v. West Virginia-Pittsburgh Coal Co.*, 4 *Cir.*, 15 *F.2d* 652.

As to the two cases concerned here, the earlier case attacked action taken under a statute, while the present suit attacks the validity of the statute itself, and the facts which would sustain the charge of an insufficient legislative vote on the statute were not only not advanced but had no part in the earlier case. Similarly, if the Controlled-Access Highways Act is in fact a special or local road law, it is unconstitutional regardless of the legislative vote on its enactment, as by its own terms it is applicable only to New Castle County.

Having fundamental doubts as to its applicability here, I do not propose to take the time to analyze further the respective contentions of the parties concerning the complex doctrine of res adjudicata because I am satisfied that plaintiffs' present complaint as to the invalidity of subchapter V, Chapter I of Title 17, Del.C. not only comes too late but fails to state a cause of action and must be dismissed.

In the case of *Smith v. Baltimore & Ohio R. Co.*, supra [85 *A.2d* 74], an action brought by the State Highway Department to compel

the Railroad to comply with a clearly special statute requiring it to increase the capacity of a bridge owned by it, then Superior Court Judge Layton quoted as follows from Black's Law Dictionary:

> " 'A law which, instead of relating to and binding all persons, corporations, or institutions to which it may be applicable, within the whole territorial jurisdiction of the lawmaking power, is limited in its operation to certain of such territory or to certain individual persons or corporations. A law is *"local"* when it pertains to a particular place or to a definite region or portion of space or is restricted to one place. *"Local laws"* are special as to place, and *"special laws"* are those made from individual cases.' "

> "It further defines a special law as: 'One relating to particular persons or things; one made for individual cases or for particular places or districts; * * *. A law is not special and local in the constitutional sense, if its affects all persons in like circumstances in the same manner.' "

These general principles, given constitutional force in most state constitutions, 2 Sutherland, Statutory Construction, (3rd ed.), § 2110, have been applied over the years generally for the purpose of preventing improper legislative log rolling, and such provisions applied to roads have served the useful purpose of forestalling the building at public expense of local private roads for the benefit of individual legislators or their friends. However, the need for building roads suitable for motor vehicles led to considerable change in concepts of what road legislation is actually local as opposed to that which, while local in a geographical sense, is obviously for the benefit of the public at large.

As early as 1909, in the case of *Anne Arundel County Commissioners v. United R. & Electric Co.*, 109 Md. 377, 72 A. 542, an act technically local in that it affected only one county had been invoked so as to require the repaving of a certain street and the relocation of tracks thereon by a street railroad company. Nevertheless, the statute was upheld over such objection because of its general nature in that it provided for a complete system for the construction, regulation, and control of public roads by the county commissioners. Compare

*State Highway Commissioners v. Chambersburg & Bedford Turnpike Road Co.,* 1913, 242 *Pa.* 171, 88 *A.* 938.

█ Since these early cases the need for building turnpikes and freeways to meet the ever-increasing flow of motor vehicle traffic has tended to emphasize the need of a logical approach to what is and what is not a local or special road or bridge law, the test to be applied in such determination being whether public as opposed to special interests are to be served, the geographical location of the structure to be built under the terms of the law being unimportant, *Application of Oklahoma Turnpike Authority,* 203 *Okl.* 335, 221 *P.2d* 795. Compare *Henderson v. Delaware River Joint Toll Bridge Commission,* 362 *Pa.* 475, 66 *A. 2d* 843.

The introductory section to the Delaware Controlled-Access Highways Act (§ 171) provides:

> "The legislature finds, determines, and declares that this subchapter is necessary for the immediate preservation of the public peace, health, and safety, and for the promotion of the general welfare."

Furthermore, § 177 of the Act authorizes the State Highway Department, to "* * enter into agreements with other States, counties, towns, or with the Federal Government, respecting the financing, planning, establishment, improvement, maintenance, use, regulation, or vacation of controlled-access facilities or other public ways in its jurisdiction, to facilitate the purposes of this subchapter."

Finally, as was brought out in the case of Piekarski v. Smith, supra, FAI-2 was planned following approval by Federal authorities acting under the terms of the Federal-Aid Highway Act, 23 U.S.C. § 101 et seq., which was enacted for the express purpose of providing federal aid for the early completion of a national system of interstate highways essential to the national interest.

█ Thus, there would appear to be no doubt that subchapter V of Chapter I, Title 17, Del.C. provides for the building of roads not only for the general citizenry of Delaware but for the benefit of the American public at large. Viewed in such light, the fact that roads

built on authority of the statute will be located in one county of the State loses all significance. A truly public bridge is even more local in a strictly geographical sense.

Having concluded that the Delaware Controlled-Access Highways Act is not a special or local law, and it appearing that under its terms owners or occupants of land or other premises have none of the normal easements or rights of user in any roads constructed pursuant thereto, it follows that plaintiffs' complaint fails to state a cause of action and must be dismissed, Application of Oklahoma Turnpike Authority, supra, and Henderson v. Delaware Joint Toll Bridge Commission, supra.

Finally, while I am of the opinion that the statute under attack is entirely valid, plaintiffs' request for an injunction in any event comes too late. Laches may be applied to deny injunctive relief even in instances where the legislative act under which action for the benefit of the public has been taken may in fact be invalid, *Condron v. Pennsylvania R. Co.*, 233 *Pa.* 197, 82 *A.* 64, and *Sambor v. Hadley*, 291 *Pa.* 395, 140 *A.* 347. The Controlled-Access Highways Act became effective on June 22, 1956, and this action was not filed until August 8, 1959. While FAI-2, the initial route under the Act, was not made a matter of formal contract with the City until June 28, 1957, and was not federally approved until April 18, 1958, substantial sums were spent on preliminary planning and preparation for its construction long before the line of attack here made took the form of a complaint for injunctive relief.

A court of equity does not look with favor on one who unjustifiably delays suit until drastic changes of position have been taken in reliance on the transaction or act of which complaint is tardily made, *Federal United Corporation v. Havender*, 24 *Del.Ch.* 318, 11 *A.2d* 331. This principle carries even greater force when delay in attacking the legality of the collection and spending of public monies will result in grave public injury were the relief sought to be granted, *Simmons v. Woodward*, 217 *Ind.* 15, 26 *N.E.2d* 37; *Chew v. City of Philadelphia*, 257 *Pa.* 589, 101 *A.* 915, *L.R.A.*1918A, 986.

In view of these conclusions, there is no need to determine the extent of the individual defendants' rights of condemnation under their general powers. The individual defendants' motion for summary judgment of dismissal on the grounds of laches and defendants' motions to dismiss for failure to state a claim will be granted. The individual defendants' motion for summary judgment based on the defense of res adjudicata will be denied.

Appropriate orders may be presented on notice.