Baum *v.* State.

## Baum *v.* The State.

[No. 19,638.    Filed October 22, 1901.]

ELECTIONS. — *Bribery.— Criminal Law.— Disfranchisement.— Infamous Crime.—Constitutional Law.—*The offense of vote selling being understood and regarded from the earliest times as an infamous crime, the act of 1899 (Acts 1899, p. 381) defining the crime of vote selling or bribery, and affixing the penalty of disfranchisement, is within the authority expressly granted by §8 article 2 of the Constitution, although vote selling was not by statute made an infamous crime at the time of the adoption of the Constitution.  *pp. 283-286.*

SAME.—*Bribery.— Criminal Law.— Disfranchisement. — Reward. — Constitutional Law.—*The act of 1899 (Acts 1899, p. 381) fixing disfranchisement as a penalty for vote selling and providing a reward to any person procuring the testimony necessary to secure a conviction of any person violating the same is not unconstitutional in that it grants immunities to and protects one class of citizens, and punishes another class, each class being guilty of the same offense.  *p. 286.*

SAME.—*Bribery.—Indictment.—*In a prosecution for vote selling under the act of 1899 (Acts 1899, p. 381) it is not necessary that the affidavit and information state the names of the candidates, the purpose of the election, and the place where the election was to be held.  *pp. 286, 287.*

CRIMINAL LAW.—*New Trial.—*Insufficiency of the evidence to sustain the verdict is not a cause for a new trial in a criminal action.  *p. 287.*

Baum *v.* State.

From Montgomery Circuit Court; *Jere West,* Judge.

Henry Baum was convicted of selling his vote and disfranchised. From the judgment he appeals. *Affirmed.*

*M. E. Clodfelter, H. N. Fine* and *I. C. Dwiggins,* for appellant.

*W. L. Taylor,* Attorney-General, *C. C. Hadley, Merrill Moores* and *F. P. Mount,* for State.

Dowling, J.—The appellant was tried and convicted upon an affidavit and information charging him with the offense of selling his vote at the November election, 1900, in violation of an act of the legislature approved March 4, 1899 (Acts 1899, p. 381), §2329 Burns 1901. By the judgment of the court, the appellant was disfranchised and rendered incapable of holding any office of trust or profit for the term of twelve years.

Error is assigned upon the overruling of the motion to quash the affidavit and information. The grounds of this motion were, that the statute upon which the prosecution was founded is in conflict with §§1, 2, 8, of article 2 of the Constitution of this State, and that the affidavit and information did not state facts sufficient to constitute a public offense.

More specifically stated, the constitutional objections taken to the statute are (1) that the crime defined by it is not an infamous crime, and therefore not subject to the punishment of disfranchisement; (2) that it grants immunities to and protects one class of citizens, and punishes another class, each class being guilty of the same crime, and (3) that it prevents the freedom and equality of elections.

The sections of the act, under which the appellant was tried and adjudged guilty, are in these words:

"Sec. 1. That whosoever sells, barters, or offers to sell or barter his vote, or offers to refrain from voting for any candidate or candidates for any office at any general, special or

primary elections or convention, either for money or property, or thing of value, or for any promise or favor or hope of reward, or who shall accept any money, property, or thing of value, with the promise or pretense of voting for, or refraining from voting for any candidate or candidates, shall upon conviction therefor be disfranchised and rendered incapable of holding any office of profit or trust, for a period not less than ten years nor more than twenty years.

"Sec. 2. Any person or persons having knowledge or information of the violation of the provisions of this act, who shall procure or furnish or cause to be procured or furnished the testimony necessary to secure a conviction of the person or persons violating the same shall be entitled to a reward of $100 payable out of the treasury of the county in which such conviction shall be had and the right to such reward shall be a valid claim against such county."

Section 8 of article 2, one of the provisions of the Constitution with which the statute is alleged to conflict, reads thus: "The General Assembly shall have power to deprive of the right of suffrage, and to render ineligible, any person convicted of an infamous crime."

It is contended on behalf of the appellant that this constitutional provision is a limitation upon the power of the legislature, and that no person can be disfranchised for an offense which is not an *infamous* crime. Counsel insist that the words *infamous crime* must be construed to apply only to such criminal offenses as were understood to be infamous in their character when the Constitution of 1851 was adopted; that, at that time, the offense of vote selling was not an infamous crime; and, hence, that the legislature could not disfranchise a person convicted of that offense.

While it is true that the revised statutes of 1843 declared that certain crimes should be deemed infamous, and that vote selling was not among them, yet this provision cannot be regarded as conclusive of the question of what crimes were then understood to be infamous. R. S. 1843, §79, p. 999.

Baum *v.* State.

The Constitution of 1816 contained a provision substantially like that of §8 of article 2 of the Constitution of 1851; but while that provision was in force, the General Assembly affixed the penalty of disfranchisement to many offenses which were not included in the list of crimes declared to be infamous by the statutes of 1838, or 1843. The revised statutes of 1843 mention, among other offenses for which the punishment of disfranchisement may be inflicted, attempting to restrain the freedom of election by threats, interference, bribery, etc.; voting or attempting to vote more than once; grand larceny; petit larceny; professional gambling, and many others.

If it is conceded that the character of the offense, i. e., whether infamous or not, is to be determined by the punishment, it will be found that at common law the deprivation of civil and political privileges was considered an infamous punishment.

It is said in Cooley's Constitutional Law, p. 29: "But the punishment of the penitentiary must always be deemed infamous; and so must any punishment that involves the loss of civil or political privileges."

So that at the time of the adoption of the present State Constitution, the words *infamous crime* must have been understood by the framers of that instrument as embracing not only crimes punishable by imprisonment in the penitentiary, but also all such offenses as were subject to the penalty of the loss of civil and political privileges.

In *Rex* v. *Pitt,* and *Rex* v. *Mead,* 3 Burr, 1335, Lord Mansfield said: "Bribery at elections for members of parliament must undoubtedly have always been a crime at common law; and consequently punishable by indictment or information."

And in 1 Cooley's Blackstone's Com. 179, the author says: "Thus are the electors of one branch of the legislature secured from any undue influence from either of the other two, and from all external violence and compulsion.

But the greatest danger is that in which themselves coöperate, by the infamous practice of bribery and corruption, to prevent which it is enacted, that no candidate shall, after the date (usually called the *teste*) of the writs, or after the vacancy, give any money or entertainment to his electors, or promise to give any, either to particular persons, or to the place in general, in order to his being elected; on pain of being incapable to serve for that place in parliament. And if any money, gift, office, employment, or reward be given or promised to be given to any voter, at any time, in order to influence him to give or withhold his vote, as well he that takes as he that offers such bribe, forfeits 500£., and is forever disabled from voting and holding any office in any corporation; unless, before conviction, he will discover some other offender of the same kind, and then he is indemnified for his own offense." In a note upon this passage, it is said: "In like manner the Julian law *de ambitu* inflicted fines and infamy upon all who were guilty of corruption at elections; but, if the person guilty convicted another offender he was restored to his credit again."

From these authorities and enactments, we think it evident that corruption at elections has from the earliest times been regarded as an infamous crime, subject to severe penalties, and frequently punished by depriving the guilty person of his right to vote and to hold office. This offense being so understood and stigmatized, it follows that a statute defining the crime of vote selling, or bribery at elections, and affixing a penalty of disfranchisement, was within the authority expressly granted in the Constitution to the legislature.

The other constitutional objections to the statute are groundless. It grants immunities to no one, and protects no class of offenders from punishment. And so far from preventing the freedom and equality of elections, it tends in the strongest manner possible to promote them.

(2) It is objected, in the next place that the facts stated

Baum *v.* State.

in the affidavit and information do not constitute a public offense, because no candidates are named, and the purpose of the election, and the place where it was to be held, are not mentioned.

These averments were not necessary. It was sufficient to charge the offense in the language of the statute. If the position of counsel for the appellant is correct, the law might be violated with impunity at any time before candidates were nominated, or the places for holding the election were fixed. Neither are the affidavit and information bad for duplicity. They describe a single offense, which consisted of the sale of the vote of the appellant with the promise that he would vote for the candidates on a certain ticket at the general election to be held on November 6, 1900.

(3) For the reasons already given, there was no error in overruling the appellant's motion in arrest of judgment.

(4) Under the assignment that the court erred in overruling the appellant's motion for a new trial, it is insisted that there was error in refusing to give certain instructions requested by appellant, and in modifying certain others, and that the evidence is insufficient to sustain the verdict.

We have carefully examined the instructions tendered on behalf of the appellant, and the modifications made by the court, and are of the opinion that the instructions numbered six, seven, eight, and ten did not contain a correct statement of the law; and that the modifications made in instructions numbered one, two, and five were proper and necessary.

(5) The last ground of the motion for a new trial discussed by counsel is the alleged insufficiency of the evidence to sustain the verdict. This is not a cause for a new trial in criminal actions. Treating it, however, as an assignment that the verdict of the jury was contrary to the evidence or to law, we have made a thorough examination of the testimony with the result that, in our opinion, the verdict is in harmony both with the law and the facts.

We find no error. Judgment affirmed.