STATE, EX REL. CLAWSON, *v.* BELL.

[No. 21,021. Filed October 8, 1907.]

169    61
f170   706
f170   707

1. QUO WARRANTO.—*Elections.—Ineligible Candidates.—Right of Eligible Candidate to Office.*—The action of *quo warranto* cannot be maintained, under §§1188, 1189 Burns 1908, §§1131, 1132 R. S. 1881, on the relation of an eligible candidate receiving a minority of the votes cast, to oust an ineligible candidate receiving the majority of the votes cast, unless he shows that the voters either knew or must be held to know of such candidate's ineligibility. p. 65.

2. SAME.—*Elections.—Evidence.—Notice of Ineligibility of Candidate.—Presumptions.*—The voters of a county are not, except upon clear proof, presumed "willfully and obstinately" to have voted for a certain candidate for county assessor who was not a freeholder. p. 68.

3. ELECTIONS.—*Ineligible Candidate.—Notice.*—Where the voters, without knowledge, elect an ineligible candidate as county assessor, his opponent is not entitled to the office. *State, ex rel.,* v. *Gallagher,* 81 Ind 558, and *State, ex rel.,* v. *Johnson,* 100 Ind. 489, limited. p. 69.

4. QUO WARRANTO.—*Officers.*—*Ineligibility.*—*Remedy.*—The prosecuting attorney has the right to institute a *quo warranto* proceeding to oust an ineligible officer.  p. 71.

From Henry Circuit Court; *John M. Morris,* Judge.

*Quo warranto* by the State of Indiana, on the relation of John M. Clawson, against Jesse Bell. From a judgment for defendant, plaintiff appeals.  *Affirmed.*

*Horace G. Yergin* and *Thomas J. Study,* for appellant.
*M. E. Forkner, G. D. Forkner, W. O. Barnard* and *W. E. Jeffrey,* for appellee.

JORDAN, J.—On January 5, 1907, John M. Clawson, as relator, filed a complaint in the lower court, in the nature of *quo warranto,* for the purpose of contesting the election of appellee to the office of county assessor of Henry county, and of obtaining a judgment ousting him from said office, and awarding the possession thereof to the relator, together with damages in his favor against appellee for the detention of the office in question. Appellee unsuccessfully demurred to the complaint upon the ground of insufficiency of facts. Thereupon he filed an answer in two paragraphs, the first being a general denial, and the second alleging affirmative matter. Upon the issues joined under the pleadings there was a trial by the court and a finding in favor of appellee, and, over the relator's motion for a new trial, assigning the statutory grounds, the court rendered judgment that he take nothing and that appellee recover of him his costs laid out and expended.

The only error assigned and relied upon for a reversal is the overruling of the motion for a new trial. The complaint alleges facts to show the eligibility and qualification of the relator, John M. Clawson, to be elected to and hold the office of county assessor. It further avers that at the general election held on November 6, 1906, at Henry county, for the election of county assessor and other officials, the defendant, Jesse Bell, and the relator and Will-

iam A. Smith were the only candidates voted for by the electors of said county for the office of county assessor; that the relator "received the highest number of votes at said election for said office of any of the eligible candidates therefor," and therefore he was duly elected thereto for a term of four years from January 1, 1907; that the de-. fendant is ineligible to hold said office of county assessor, for the reason that he was not a resident freeholder of Henry county for four years prior to the date of said election; that the relator on December 19, 1906, filed with the county auditor his official bond, as required by law, with good and sufficient sureties, and that on the same day he took the required oath of office and became duly qualified to act and discharge the duties of county assessor; that on January 5, 1907, he demanded of the defendant possession of the office, together with all books, papers and keys thereto belonging, with which demand the defendant refused to comply; that said defendant on January 4, 1907, usurped said office, and has held the same and received the fees and emoluments thereof, in the sum of $25, and that he has, during said time, wrongfully and unlawfully kept the relator out of possession of the office and deprived him of the fees and emoluments, to his damage in the sum of $25.

The complaint discloses that the relator demanded possession of the office on January 5, before the commencement of this action on that date. The following, among other facts, is shown by the evidence in the record: Appellee was nominated by the Republican party of Henry county, Indiana, as a candidate for county assessor, at the primary election held by that party in 1906. Relator was nominated as a candidate for the same office by petition as a candidate of the Citizens party. William A. Smith was also nominated for the office by the Prohibition party. The board of election commissioners of Henry county, in pursuance of law, appears to have caused the names of each

of said nominees to be printed on the official ballots as candidates for said office at the election in question. It is shown by the official canvass and return of the votes cast at the election that appellee received 3,257 of the votes cast by the voters of said county for county assessor, the relator received 1,783 votes for the same office, and William A. Smith received 265 votes. Appellee was duly returned by the proper board of canvassers as elected to the office in controversy, and the proper certificate of his election was issued and delivered to him. On November 24, 1906, he appears to have qualified by executing an official bond to the approval of the county auditor, and by taking the required oath of office. After having so qualified he entered into possession of the office on January 4, 1907, and began to discharge the duties thereof. The relator, on November 19, 1906, appears to have taken the oath of office and executed an official bond, which he tendered to the county auditor for acceptance and approval. The auditor refused to receive or approve this bond, on the ground that the relator had not been elected to said office. The evidence shows that the relator had been a resident freeholder of Henry county for over four years prior to the date of election, and was in other respects qualified for said office. There is also evidence tending to show that appellee, at and prior to the election, was a resident freeholder and had been a voter of the county for many years. Relator predicates his right to institute and maintain this action upon the provisions of §§1188, 1189 Burns 1908, §§1131, 1132 R. S. 1881, relating to the filing of informations, etc. It is provided in §1188, *supra,* that "an information may be filed against any person or corporation in the following cases: First, when any person shall usurp, intrude into, or unlawfully hold or exercise any public office." Section 1189, *supra,* provides that "the information may be filed by the prosecuting attorney in the circuit court of the proper county, upon his own relation, whenever he shall deem it

his duty to do so, or shall be directed by the court or other competent authority, or by any other person on his own relation, whenever he claims an interest in the office.'' Section 112 of the statute concerning taxation, as amended by an act of the legislature approved February 25, 1903 (Acts 1903, p. 49, §37, §8530 Burns 1905), provides: ''There shall be elected on the first Tuesday after the first Monday in November, 1906, and every four years thereafter in each county in this State, one county assessor, who shall possess the powers and perform the duties hereinafter specified. Such county assessor shall be a resident freeholder of the county not less than four years before the date of such election.''

The gravamen of the complaint is the ineligibility of appellee to be elected to, and to hold the office in controversy, because he had not been a freeholder at

1. the date of the election, as required by the above statute; that, by reason of the fact that the relator received at such election the next highest number of votes, he was elected to said office and is entitled thereto. In fact, the only contention urged by counsel for reversal of the judgment is that the evidence in the case establishes that the appellee was not a freeholder at the date of the election in 1906, or at any time within four years prior thereto. Consequently they argue that he was not eligible to be elected to or to hold the office of county assessor. They further insist that, as the relator received the next highest number of votes and is shown to have been a freeholder, as required by the statute, and otherwise eligible to be elected to and to hold the office, and having qualified as shown, he is entitled to the possession of the office and to receive and have the emoluments thereof; or, in other words, they seek to sustain his right to oust appellee from the office and to be installed therein himself, solely on the ground that he, an eligible candidate at the election in

controversy, received the next highest number of votes to
appellee, who was, as asserted, ineligible. Opposing coun-
sel endeavor to uphold the right of appellee to the office,
(1) because, as they contend, the evidence establishes that
he was a freeholder as required by law at the date of the
election; (2) that the statute requiring a county assessor
to be a freeholder, etc., is repugnant to the state Constitu-
tion, and contrary to the fundamental principles of our
government, and therefore invalid. We pass the question
in respect to the invalidity of the statute without consid-
eration, for the reason that we have reached a conclusion
unfavorable to relator upon a vital point in the case.

Conceding, without deciding, that appellee, under the
facts, is shown to have been ineligible at the date of the
election, on the ground as claimed by the relator, never-
theless the latter, under the facts and the law applicable
thereto, as hereafter shown, is not in a position successfully
to maintain an action to contest the election of appellee
and to oust him from the office in question. It will be noted
that by §1189, *supra*, the prosecuting attorney is author-
ized, upon his own relation, to file the information pro-
vided by §1188, *supra*, or the same may be filed by *"any
other person on his own relation, whenever he claims an in-
terest in the office."* (Our italics.) The claim to the
office which the relator asserts under the facts as alleged in
his complaint, and as shown by the evidence, cannot be
held to be such an interest therein, within the meaning of
the statute, as will authorize him to become the relator in
this case. The interest claimed must be shown to be such as
will, in the eye of the law, give him a standing in court to
maintain the action. *State, ex rel., v. Ireland* (1891), 130
Ind. 77; *Reynolds v. State, ex rel.* (1878), 61 Ind. 392; 15
Cyc. Law and Proc., 406.

At the election in question relator neither received a
majority nor plurality of the votes cast by the electors of
Henry county for county assessor, while, in fact, appellee

appears to have received a large majority of the votes cast
for that office. Under the facts the relator falls far short of
establishing any legal right to or interest in the office. It
does not necessarily follow because he, an eligible candi-
date, received the next highest number of votes to appellee,
who was ineligible, as we have, for the sake of argument,
conceded, must be held to have been elected to the office.
While the rule affirmed by the authorities is that a majority
or plurality of votes cast at a popular election for a person
ineligible to the office for which such votes are cast does
not, as a general rule, confer any right or title to the of-
fice upon such an ineligible candidate, nevertheless the
votes so cast will be effectual to prevent the election of an
eligible person who received the next highest number of
votes, in the absence of proof of the fact that the votes cast
for the ineligible candidate were given by the electors with
the full knowledge, either actual or constructive, of his
ineligibility. 10 Am. and Eng. Ency. Law (2d ed.), 758;
15 Cyc. Law and Proc., 404; *Commonwealth, ex rel.,* v.
*Cluley* (1867), 56 Pa. St. 270, 94 Am. Dec. 75; *People, ex
rel.,* v. *Clute* (1872), 50 N. Y. 451, 10 Am. Rep. 508.

This rule is in harmony with the holding in *Gulick* v.
*New* (1860), 14 Ind. 93, 77 Am. Dec. 49, which is the first
decision in this State to assert and follow what is recog-
nized as the English rule. The same rule was affirmed and
followed in *Carson* v. *McPhetridge* (1860), 15 Ind. 327.
All other cases in this State involving the same question
rest upon *Gulick* v. *New, supra,* and they must be limited
to the rule as therein recognized and affirmed, and cannot
be considered as extending beyond the holding in that case.
The court, in the case last cited, in considering the ques-
tion as there involved, said: "Whilst it is true that the
votes of the majority should rule, the tenable ground ap-
pears to be that if the majority should vote for one *wholly
incapable of taking the office,* having notice of such inca-
pacity, or should perversely refuse, or negligently fail, to

express their choice, those, although a minority, who should legitimately choose one eligible to the position, should be heeded." (Our italics.)   Perkins, J., in an opinion in the same case, in expressing the views of the court, said: "Where, at an election, there are opposing candidates for an office, and the candidate receiving the highest number of votes is ineligible, but from a fact or cause which the voters did not and were not bound to know, the result is a failure, and gives no candidate the right to the office, and should be followed by another election.   Probable examples, under this proposition, of cases where the voters might not have knowledge, viz.: infancy of candidate; nonresidency; want of naturalization; not of male sex; not of required degree of white blood; not in existence.   *   *   *   Where the voters at the election do know, or are legally bound to know, so that, in law, they are held to know, of the ineligibility of a candidate, the election does not result in a failure; but, in such case, the eligible candidate receiving the highest number of votes is legally elected, and entitled to the office."

In the case of *Hoy* v. *State, ex rel.* (1907), 168 Ind. 506, we considered the basis upon which the English rule is founded, and said: "The cases of *Gulick* v. *New* [1860], 14 Ind. 93, and *Vogel* v. *State, ex rel.* [1886], 107 Ind. 374, accept and enforce the English rule.   Under the latter rule or doctrine great stress is placed upon the fact that the electors, having had notice of the ineligibility or incompetency of the person for whom they cast their votes, therefore it is 'wilful obstinacy and misconduct' on their part to cast their votes for a person laboring under a known incompetency."   The vital infirmity in the case at bar 2. is that neither the facts as alleged in the complaint nor as disclosed by the evidence in any manner show that the electors of Henry county, when they cast their votes for appellee, had any knowledge, either actual or constructive, of his ineligibility.   It cannot, in the ab-

sence of such a showing, be presumed that they "wilfully or obstinately" cast their votes for appellee with notice that he was ineligible to be elected to, and to hold the said office. *Hoy* v. *State, ex rel., supra; Barnum* v. *Gilman* (1881), 27 Minn. 466, 8 N. W. 375, 38 Am. Rep. 304; *In re Corliss* (1876), 11 R. I. 638, 23 Am. Rep. 538.

In the latter case the court held that where a disqualified candidate has received the greatest number of votes the election is void and does not result in the election 3. of the eligible candidate for the same office who received the next highest number of votes, where it is not shown that the electors, with knowledge of the disqualification, wilfully voted for the ineligible candidate. In *People, ex rel.,* v. *Clute, supra,* the facts appear to be as follows: The relator, Furman, and the defendant, Clute, were, at the general election held in November, 1871, opposing candidates for the office of superintendent of the poor for the county of Schenectady, New York. A statute of that state prohibited the election of a supervisor of a town or city to the office of the superintendent of the poor. Clute, at the time of the election, appears to have held the office of supervisor of the fifth ward of the city of Schenectady. He received at said election a majority of all the votes cast for the office in question, and the relator, an eligible candidate, received the next highest number. Clute was declared elected, and, having qualified as required by law, entered upon the discharge of the duties of the office. The relator, Furman, also took the oath of office, tendered to and deposited with the proper officer his official bond, and then claimed the office and commenced an action in the name of the people, on his own relation, to oust Clute therefrom and to obtain possession thereof for himself, on the ground that, under the statute, Clute was ineligible to be elected to the office. There was no proof on the trial of actual notice to any of the electors of the county of Clute's ineligibility, nor were there any facts shown from which

such notice could be implied or imputed, other than the fact that at the time of the election Clute held the office of supervisor in said county. The court in that case held that, by reason of the statute, Clute was not eligible to the office, but also held that the relator, who received the next highest number of votes, was not entitled to the office, in the absence of proof that the persons who voted for Clute did so with notice or knowledge of his ineligibility. It was further held that there was no presumption of notice on the part of the electors by reason of the fact that Clute's ineligibility was created by statute. In passing upon the question, and denying the right of the relator to be awarded the office, the court, by Folger, J., said on page 466: "We think that the rule is this: The existence of the fact which disqualifies, and of the law which makes that fact operate to disqualify, must be brought home so closely and so clearly to the knowledge or notice of the elector, as that to give his vote therewith indicates an intent to waste it. The knowledge must be such, or the notice brought so home, as to imply a wilfulness in acting, when action is in opposition to the natural impulse to save the vote and make it effectual. He must act so in defiance of both the law and the fact, and so in opposition to his own better knowledge, that he has no right to complain of the loss of his franchise, the exercise of which he has wantonly misapplied. * * * Our theory of government by the people is upon the assumption that the people as a whole are intelligent of their rights and interests, and are honestly and earnestly concerned in the due and wise administration of affairs, and zealously alive to the need of good and fitting men in the various places of public trust, and hold in high esteem the privilege of suffrage, and are unready to pretermit its exercise or to exercise it meaninglessly. It is much to presume, with this as our starting point, that any considerable body of electors will purposely so exercise their right of electing to office as that it shall be but an empty form; and

that going through with outward signs of an election they will of intent so cast their ballots, as that they will be votes wasted.''

The number of votes which the relator in the case at bar received is far below those received by appellee. To nullify the votes cast for the latter, in the absence of proof of the required knowledge of his ineligibility on the part of the persons who voted for him, and award to the relator the right to the office in question, would be antagonistic to the principles of popular government, and would, as is shown by the number of votes cast for appellee, be in opposition to the deliberate choice of a large majority of the voters of Henry county. There are some loose expressions in the cases of *State, ex rel.,* v. *Gallagher* (1882), 81 Ind. 558, and *State, ex rel.,* v. *Johnson* (1885), 100 Ind. 489, and in other cases decided by this court upon the question here involved, which might afford room for asserting that these decisions do not consider the feature of notice or knowledge upon the part of the voters as an essential and controlling element, and are, for this reason, in opposition to the holding in *Gulick* v. *New, supra.* This is not the intent of these cases, and they must be limited and restricted to the doctrine as enunciated in the latter case. We find no warrant under the facts in this case for holding that the votes cast for appellee should be treated as nullities, and therefore rejected, and the right to the office be awarded to the relator. In a legal sense, he has no more interest therein or thereto than he would have had he not been a candidate at said election. If appellee,

4. as claimed, is disqualified for holding the office, the proper prosecuting attorney, as provided by the statute, can institute an action in the name of the State on his own relation to oust him from the office.

We find no error. Judgment affirmed.