OVIATT V. BEHME ET AL.

[No. 29,598. Filed February 13, 1958. Rehearing denied March 18, 1958.]

70

*Wilbur F. Dassel, Milford M. Miller* and *William C. Welborn,* all of Evansville, for appellant.

*John G. Bunner* and *James H. Meyer,* both of Evansville, for appellee, John C. Behme.

*Edwin K. Steers,* Attorney General, as *amicus curiae.*

ARTERBURN, J.—At the general election in November, 1956, Clyde Oviatt, appellant, received 39,775 votes as a candidate for the office of Treasurer of Vanderburgh County. Appellee John C. Behme received 33,453 votes and appellee Lee J. Jackson, 244 votes. Appellee Behme brought an action to contest the election of appellant Oviatt on the ground that he, the contestor, was the *"qualified* candidate who received the highest number of votes." (Our italics.) Acts 1945, ch. 208, §346, p. 680, being Burns' §29-5506, 1949 Replacement.

The contestor's contention was predicated upon the point that a constitutional amendment was adopted by the electors of the State in the general election of 1952, which extended the office of treasurer, among other offices, from two to four years, and

> "Provided, That the Treasurer of each county re-elected at the general election in 1952 shall continue in office until January 1, 1957 and shall not be eligible for re-election to the office of County Treasurer at the general election in 1956."

Oviatt was re-elected Treasurer at the January election in 1952, and by virtue thereof continued in office until January 1, 1957.

The trial court entered a judgment for the contestor,

appellee Behme, declaring him elected to the office of Treasurer of Vanderburgh County. From this judgment, Oviatt appeals. No issue is made as to the procedural steps by which the various questions are here presented, and we need not encumber the record by a recital in that respect.

One of the main contentions made by the appellant is that the proviso to the proposed constitutional amendment which disqualifies the appellant in the election of 1956 was never properly submitted to the voters of the State. The record is undisputed that on the ballot and on the voting machines the proviso was not set forth. Only the following substance of the amendment upon which the electors were asked to vote was set forth in the official ballot as follows:

### "CONSTITUTIONAL AMENDMENT

"Shall the term of Treasurer, Coroner, and Surveyor in each county be increased from (2) two to (4) four years by constitutional amendment? This amendment submitted pursuant to chapter 208 of the Acts of the 84th session and chapter 92 of the Acts of the 87th session of the Indiana General Assembly.

"

At the same time another constitutional amendment extending the office of prosecuting attorneys was also submitted in substantially the same form, which also omitted a proviso thereto. Our attention is also directed to other instances in the past when the entire proposed amendment was not set forth on the ballot submitted to the electors.

We find nothing in the constitution with reference

to what wording is mandatory in the submission of an amendment to the electors to be voted upon.

Article 16, §1, after providing the mechanics by which an amendment is approved, states:

> "then it shall be the duty of the General Assembly to submit such amendment or amendments to the electors of the State."

The General Assembly, so far as we can find, has not indicated that the entire amendment must be set out on the ballot or voting machine. In an act pertinent to the matter it has said:

> "The proposed constitutional amendment or amendments shall be stated on such ballot in words sufficient to clearly designate the same, and such statement or statements shall be printed in a separate column on the official ballot." Acts 1945, ch. 208, §146, p. 680, being §29-4204, Burns' 1949 Replacement.

So long as the amendment is sufficiently identified and is not confused with any other amendments submitted at the time, we, as a court, do not have the right to strike it down on any theory that the legislature failed to use good judgment in the method of submitting the amendment. Some amendments may be so lengthy that it would create a physical and mechanical problem in setting them forth on a ballot or voting machine. Appellees further point out that the Constitution of 1852, when it was submitted to the voters of this State for approval, was not printed in full or even the substance thereof set out on the ballots. Acts 1851, ch. 29, §3, p. 54. The amendment in question was sufficiently identified and properly ratified.

Although appellee Behme did not receive the highest vote for the office of Treasurer of Vanderburgh County,

he claims he is nevertheless entittled to the office by virtue of the following statute, since appellant Oviatt was disqualified under the constitutional amendment:

"The court shall determine the issues raised by such petition and answer thereto, and shall declare as elected or nominated, as the case may be, that qualified candidate who received the highest number of votes, and render judgment accordingly, and the clerk of the circuit court shall certify such determination to the proper officer. Such judgment and determination shall be final unless appealed from to the Supreme Court as herein provided;" Acts 1945, ch. 208, §346, p. 680, being §29-5506, Burns' 1949 Replacement.

This statute, however, must be interpreted in light of the common law, as well as the constitution of this State. This court, in *State ex rel. Clawson* v. ■ *Bell* (1907), 169 Ind. 61, 70, 82 N. E. 69, 124 Am. St. Rep. 203, 13 L. R. A. (N.S.) 1013, approved the following statement of the principle here involved:

" 'The existence of the fact which disqualifies, and of the law which makes that fact operate to disqualify, must be brought home so closely and so clearly to the knowledge or notice of the elector, as that to give his vote therewith indicates an intent to waste it. The knowledge must be such, or the notice brought so home, as to imply a wilfulness in acting, when action is in opposition to the natural impulse to save the vote and make it effectual. He must act so in defiance of both the law and the fact, and so in opposition to his own better knowledge, that he has no right to complain of the loss of his franchise, the exercise of which he has wantonly misapplied.' " (Quoting from *People ex rel.* v. *Clute* (1872), 50 N. Y. 451, 10 Am. Rep. 508.)

Properly qualified voters may not be disfranchised except by their own wilful or deliberate act to the

extent that one who did not receive the highest ■ vote cast may still be declared elected. The statute in question must be interpreted in accordance with the constitutional provision that "all elections shall be free and equal." Art. 2, Sec. 1, Constitution of Indiana.

Otherwise it could happen that a candidate who received but very few votes would be entitled to an office although a vast majority of the votes were cast ■ by voters believing in good faith another candidate was qualified when, in fact, he was not. The constitutional provision that "all elections shall be free and equal" means that "the vote of every elector is equal in its influence upon the result to the vote of every other elector." *Blue* v. *State ex rel. Brown* (1934), 206 Ind. 98, 114, 188 N. E. 583, 91 A. L. R. 334.

Therefore, the knowledge of the ineligibility of a candidate must be such on the part of those voting for him as to imply a wilfulness in acting and voting in defiance of the law and in opposition to such knowledge, in order to nullify such votes without nullifying all votes "equally" at the same time.

Appellant Oviatt claims the trial court erred in the application of the principles just stated by excluding evidence which would show that those who voted for him did so in good faith, believing he was qualified and did not wilfully and deliberately throw away their vote. He also strenuously contends that this evidence showed that his right to hold office and his eligibility was duly adjudicated in his favor.

This evidence consisted of testimony and exhibits showing that appellant brought an action in January, 1956 in Vanderburgh County for a declaratory judgment for the purpose of determining his qualifications

to run for the office of Treasurer of Vanderburgh County in the general election in November, 1956. He made members of the Vanderburgh County Election Board parties thereto. They appeared and the cause was put at issue. Upon trial, the court decreed under certain reasoning, which we have no right to question here, that appellant Oviatt was eligible and qualified for the office of Treasurer of Vanderburgh County and was entitled to be a candidate therefor in the ensuing election.

There was an attempt to intervene in that cause, which the court denied. There was no appeal from the denial to intervene and no appeal from the final judgment of that court. The judgment, even if it be assumed to be erroneous, nevertheless became the law of that case and bound the parties thereto, including the county election board, which represented the public interest at the time. This adjudication was given publicity in the newspapers of the county.

Coupled with this publicity in connection with the declaratory judgment, the facts here also revealed by the evidence introduced and tendered that there was considerable uncertainty about the proviso in the constitutional amendment being properly ratified as a result of its omission on the ballot. It can very well be said that the voters of Vanderburgh County were justified in believing that appellant Oviatt was qualified as a candidate for re-election by reason of both the court decision and the omission of the proviso from the constitutional amendment as placed on the ballot.

A declaratory judgment proceeding is a recognized method for the orderly determination of the issue presented in that case. *Kirkpatrick* v. *King et al.* (1950), 228 Ind. 236, 91 N. E. 2d 785.

Appellee Behme was a part of the general public bound by that judgment rendered against the election board. He could not have been made a party defendant at the time. He had no official connection or interest sufficient for such purpose. Any interested person who believed the election board would not properly represent the interests of the public, upon a proper showing, had a right to intervene, and if denied such permission, had the right to appeal from such denial. This was not done in that case.

Appellee Behme argues that the declaratory judgment was erroneous. This may be quite true, but so long as it remained a judgment not set aside or from which no appeal was taken, it was binding upon the election board and fixed the status of the appellant Oviatt with reference to the election which the board supervised. It was an adjudication of the law as to that election in that county and was the law of that case. We may not at this time review the judgment as if it were on appeal here, even if we assume that it was erroneously decided. The judgment cannot be collaterally attacked in this court, any more than in any other court. This is not an appeal from that declaratory judgment proceeding. 26 C. J. S., Declaratory Judgment, §35, p. 113; 50 C. J. S., Judgments, §910, p. 551; *McAlpine et al.* v. *Sweetser et al.* (1881), 76 Ind. 78.

This court said in a similar situation:

"The authorities are almost unanimous in holding that, in the absence of a showing of fraud or collusion, a judgment against an officer of a local government, respecting matters which are of general and public interest, entered in an action where there was a bona fide controversy, is binding and conclusive upon all residents, citizens, and taxpayers of the local government. 34 Corpus Juris, §1459, pp. 1028,

1029; Freeman on Judgments, 5th Ed., Vol. 1, §507, et seq., p. 1089. The rule rests upon sound reason. Obviously it would be impossible, or at least impractical, to make every taxpayer in the community a party. It is necessary therefore that some representative of the individual taxpayers be made a party. Nothing is more reasonable than that their official representative, charged with the responsibility of legally doing, or refraining from doing, the thing involved, should represent them." *Simmons* v. *Woodward* (1940), 217 Ind. 15, 20, 26 N. E. 2d 37.

The court committed error in excluding the proffered evidence in connection with the declaratory judgment proceedings. That judgment adjudicated the issue of the eligibility of the appellant to be a candidate at that election in that county and take office if he received the highest number of votes cast for the office. Appellant is entitled to the office in controversy here.

It is a serious matter under our system of government to deprive one of an office for which he has received the highest number of votes.

"It is a fundamental idea in all republican forms of government that no one can be declared elected and no measure can be declared carried, unless he or it receives a majority or a plurality of the legal votes cast in the election." 29 C. J. S., Elections, §243, p. 353.

The erroneously rejected evidence is in the record and we have had an opportunity to consider it on the same basis as if it had been admitted at the trial. For that reason, and also because there is no substantial dispute as to the facts in this case, a new trial would add nothing but costs and time.

The judgment of the trial court is reversed, with directions to enter a judgment in conformity with this decision.

Emmert, C. J., concurs in result.
Bobbitt, Landis and Achor, JJ., concur.

NOTE.—Reported in 147 N. E. 2d 897.