**William Palmer TAYLOR,
Appellant–Plaintiff,**

v.

**STATE ELECTION BOARD OF the STATE OF INDIANA; and the Vanderburgh County Council, Appellees–Defendants.**

No. 74A01–9207–CV–248.[1]

Court of Appeals of Indiana,
First District.

June 22, 1993.

1. This case was transferred to this office on April 20, 1993 by direction of the Chief Judge.

David Bunner, Steven L. Bohleber, Evansville, for appellant-plaintiff.

Pamela Carter, Atty. Gen., John T. Roy, Deputy Atty. Gen., Indianapolis, Joseph H. Harrison, Jr., Evansville, for appellees-defendants.

ROBERTSON, Judge.

William Palmer Taylor appeals from the grant of summary judgment in favor of the State Election Board of the State of Indiana, its chairman and members, and the Vanderburgh County Council. Taylor had sought a declaratory judgment that he could remain on the Vanderburgh County Council even though Ind.Code 3–8–1–5(3)(B), passed after Taylor's election, apparently disqualified him from holding the office. The trial court concluded that the statute, in fact, disqualified him. On appeal, Taylor alleges the statute is unconstitutional as applied to him in the following particulars:

I.   Whether its application to the Appellant constitutes an ex post facto law as prohibited by Article I, Section 9(3) and 10(1) of the United States Constitution and Article I section 24 of the Indiana Constitution.

II.   Whether its application to Appellant herein constitutes an improper disenfranchisement as defined by Article II, Section 8 of the Indiana Constitution, which permits disenfranchisement only upon conviction of "infamous crimes."

III.   Whether the application of the statute to the Appellant constitutes double jeopardy in violation of Article I, Section 14 of the Indiana Constitution and Amendment 5 of the United States Constitution.

IV.   Whether the application of this statute to the Appellant herein, or to any person, is an impermissible deprivation of liberty and property without due process of law in violation of the United States Constitution, Amendments 5 and 14.

V.   Whether the application of the statute to the Appellant herein constitutes an impermissible disenfranchisement of all voters who cast a ballot for him at the time of his last election, in violation of Article II, Section 1 of the Indiana Constitution.

We affirm because the trial court correctly decided these issues and determined that the Election Board was entitled to judgment as a matter of law.

The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Bassett v.*

*Glock* (1977), 174 Ind.App. 439, 368 N.E.2d 18. If no genuine issue of material fact exists, summary judgment is appropriate if the movant is entitled to judgment as a matter of law. *Woodward Insurance, Inc. v. White* (1982), Ind., 437 N.E.2d 59. Summary judgment is appropriate when there is no dispute or conflict regarding facts which are dispositive of the dispute. *Madison County Bank & Trust Co. v. Kreegar* (1987), Ind., 514 N.E.2d 279.

The facts are undisputed. In 1982, Taylor was convicted of two (2) counts of class D felony criminal recklessness while he was a member of the Vanderburgh County Council. He was removed from office by operation of law upon the imposition of criminal penalties for the offenses. Taylor was later re-elected to the Council and has been re-elected twice more in general elections. In 1991, the Indiana General Assembly amended Ind.Code 3–8–1–5 to include subsection (3), so that a person is disqualified from holding or being a candidate for an elected office if the person has been convicted of a felony (as defined in IC 35–50–2–1). I.C. 3–8–1–5(3)(B). In reliance on this amendment, the Election Board advised the Chairman of the Vanderburgh County Democrat Committee that Taylor's seat on the Council was vacant by operation of law. Taylor then filed his action for declaratory judgment, and the trial court concluded that he was disqualified.

## I.

■ Only two of the three authorities Taylor cites as the bases of his ex post facto argument are applicable here. The Constitution of Indiana provides that "No ex post facto law ... shall ever be passed." Ind. Const. art. I, § 24. The Constitution of the United States provides that "No state shall ... pass any ... ex post facto law ..." U.S. Const. art. I, § 10, cl. 1. Taylor also cites to the federal provision which states that "No ... ex post facto law shall be passed." U.S. Const. art. I, § 9, cl. 3. That provision, however, applies only to Congress and not the states. *Smith v. State* (1949), 227 Ind. 672, 87 N.E.2d 881.

■ An ex post facto law is a legislative act relating to criminal matters, retroactive in its operation, 1) which alters the situation of an accused to his disadvantage or deprives him of some lawful protection to which he is entitled, as a law which imposes a punishment for an act which was not punishable when it was committed; 2) which makes a crime greater than when it was committed or imposes additional punishment therefor; or 3) which changes the rules of evidence by which less or different testimony is sufficient to convict. *See In re Petitions to Transfer Appeals* (1931), 202 Ind. 365, 174 N.E. 812. Taylor's class D felony offenses were punishable when committed, so his disqualification did not impose "a punishment for an act which was not punishable when it was committed." Further, the statute did not make the crime greater than a class D felony, that is, "greater than when it was committed," and did not change the rules of evidence. The only portion of the definition of ex post facto that might support Taylor's argument is that the statute "imposes additional punishment" for the offenses; that is, if the disqualification is, in fact, an additional punishment for his past convictions of class D felony criminal recklessness.

■ The statute, however, does not impose additional punishment upon Taylor. Indiana Code Article 3–8–1 generally lists qualifications for candidates; but, in contrast, I.C. 3–8–1–5 provides the circumstances under which an officer or candidate is disqualified. The statute is not an ex post facto law merely because it draws upon facts which occurred prior to the passage of the statute. *United State v. Bell* (E.D.Texas, 1973), 371 F.Supp. 220, 223.

> The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation ...

*De Veau v. Braisted* (1959), 363 U.S. 144, 160, 80 S.Ct. 1146, 1155, 4 L.Ed.2d 1109. The legislature's aim here was not to pun-

ish past activities but to regulate elected officials and candidates based upon their general characteristics, one of which is trustworthiness. The public considers trustworthiness to be a relevant and basic qualification of persons who serve the citizens as elected officials. *See Bell*, 371 F.Supp. at 223.

The decision reached in *Crampton v. O'Mara* (1923), 193 Ind. 551, 139 N.E. 360, *appeal dismissed*, (1925), 267 U.S. 575, 45 S.Ct. 230, 69 L.Ed. 795 is instructive here. In *Crampton*, the appellee was elected in November of 1921, for a term of four years to begin in January of 1922. Before this, the legislature had passed an act to void the election of persons who, inter alia, had been convicted of certain crimes. Chapter 83, Acts 1921, p. 179. The Act had become effective after its passage on March 5, 1921. *Id.* The appellant contested the appellee's election because the appellee had been convicted, in 1915, of one of the crimes listed in the Act. On appeal, the appellee contended, inter alia, that the Act was ex post facto. The appellee's contention was that the Act imposes additional punishment for his crimes; that is, his 1922 disqualification due to the 1921 Act would be an additional punishment for his 1915 convictions.

The appellee in *Crampton* cited *Cummings v. State of Missouri* (1866), 36 Mo. 263, reversed 71 U.S. (4 Wall.) 277, 18 L.Ed. 356, as does Taylor in the present case. Taylor claims that *Cummings* shows that the United States Supreme Court "was of the opinion that to lose the right to hold office or practice a profession on the basis of prior acts was, in fact additional punishment for the prior act." The *Cummings* court, however, decided that the deprivation of the right or privilege to engage in the occupation there was, in effect, punishment. *Cummings*, 4 Wall. at 320, 18 L.Ed. 356. In the present case, the aim of the disqualification is not punishment but is regulation of a present situation based upon trustworthiness. *De Veau*, 363 U.S. at 160, 80 S.Ct. at 1155; *Bell*, 371 F.Supp. at 223. *See Hawker v. New York* (1898), 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002. We follow the lead of the *Crampton* court

and do not conclude that the statute imposes additional punishment for Taylor's past convictions. The trial court correctly concluded that the Election Board was entitled to judgment as a matter of law on this issue.

## II.

Taylor claims that his disqualification constitutes an improper disenfranchisement as defined by Article II, Section 8 of the Constitution of Indiana, which permits disenfranchisement only upon conviction of an "infamous crime," as follows:

> The General Assembly shall have the power to deprive of the right of suffrage, and to render ineligible, any person convicted of an infamous crime.

Taylor claims that "infamous crimes" are limited to those listed in *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210, which does not include criminal recklessness, the crime of which Taylor was convicted.

■ The *Ashton* court, however, decided an evidentiary question and did not purport to define "infamous crime" as listed in our state constitution. For the purpose of impeaching the credibility of a witness, only those convictions for crimes involving dishonesty or false statement shall be admissible. *Id.* at 62–63, 279 N.E.2d at 216–217. In addition, however, the courts are bound by I.C. 34–1–14–14, which permits impeachment by showing prior convictions for crimes which would have rendered a witness incompetent. *Id.* The statute previously in force when the legislature enacted the predecessor to I.C. 34–1–14–14 was Revised Statutes of 1843, sec. 79, p. 999, which declared that any person who might thereafter be duly convicted of the *crime* of treason, murder, rape, arson, burglary, robbery, man-stealing, forgery or wilful and corrupt perjury, should ever after such conviction be deemed *infamous*, and, among other disabilities, be incapable of giving evidence in any court of justice. *Id.* at 55–56, 279 N.E.2d at 212–213 (quoting *Glenn v. Clore* (1873), 42 Ind. 60) (emphasis supplied). Thus, it is quite clear that I.C. 34–1–14–14 permits, for purposes of

impeachment, the introduction of the record of convictions for the crimes of treason, murder, rape, arson, burglary, robbery, kidnapping, forgery and wilful and corrupt perjury; furthermore, the trial court cannot exclude such evidence. *Id.* 258 Ind. at 57, 279 N.E.2d at 213.

The 1843 statute used in *Ashton* does not define those crimes that are "infamous crimes" for the purposes of Ind. Const. art. II, § 2. As our supreme court has stated:

> While it is true that the revised statutes of 1843 declared that certain crimes should be deemed infamous ..., yet this provision cannot be regarded as conclusive of the question of what crimes were then understood to be infamous. *R.S.,* 1843, § 79, p. 999.

*Baum v. State* (1901), 157 Ind. 282, 61 N.E. 672, 673. The *Baum* court continued:

> So that at the time of the adoption of the present State Constitution, the words *infamous crime* must have been understood by the framers of that instrument as embracing not only crimes punishable by imprisonment in the penitentiary, but also all such offenses as were subject to the penalty of the loss of civil political privileges.

*Id.* at 285, 61 N.E. at 673 (emphasis original).

One jurisdiction has analyzed the use of the term "infamous crime," and the analysis is helpful to a determination of what that general term means in our state constitution:

> For a long time prior to the declaration of independence, and before the adoption of the federal constitution, there were, as then understood, two kinds of infamy,—the one based on the opinion of the people respecting the mode of punishment, and the other in relation to the future credibility of the culprit. Eden, P.L. c. 7, § 5.
>
> \* \* \* \* \* \*
>
> [The nature of the crime as understood at common law] at one time obtained considerable foothold in the federal courts ...
>
> But this doctrine has since been expressly disapproved by the supreme court of the United States, where it has been decided that any crime which is punishable by imprisonment for a term of years is an infamous crime ...

*Butler v. Wentworth* (1891), 84 Me. 25, 24 A. 456.

■ Likewise, Indiana courts also look to the punishment inflicted to determine whether a crime is an "infamous crime." In *Crampton*, the court noted that the following definition of "infamous crime" had been adopted in this State: a crime punishable for a term of years in the penitentiary at hard labor. *Crampton*, 193 Ind. at 556, 139 N.E. at 362. Further, inasmuch as imprisonment in a state penitentiary or prison with or without hard labor being an infamous punishment, a crime punishable by such imprisonment is an "infamous crime." *Mackin v. United States* (1886), 117 U.S. 348, 6 S.Ct. 777, 29 L.Ed. 909.

■ A "felony conviction" means a conviction, in any jurisdiction at any time, with respect to which the convicted person might have been imprisoned for more than one (1) year. I.C. 35–50–2–1. Criminal recklessness is a class D felony and therefore meets this definition. I.C. 35–50–2–7. Thus, each of Taylor's class D felony convictions was a felony which was punishable by imprisonment for a term of years. Each was, therefore, an infamous crime. *See e.g., Baum*, 157 Ind. 282, 61 N.E. 672. *See also, Crum v. State* (1897), 148 Ind. 401, 47 N.E. 833 (at common law all felonies were infamous crimes; case which stated that "[n]ot all felonies render the perpetrator of them infamous" was based upon a statute under the old constitution, R.S. 1843, p. 999, section 79, and p. 719, section 261; decisions cited are no longer, if ever, controlling in the matter under consideration). The trial court correctly concluded that Taylor's disqualification did not constitute improper disenfranchisement due to his conviction of an infamous crime.

## III.

■ Taylor claims that his disqualification constitutes double jeopardy. The Unit-

ed State Supreme Court many times has held that the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *United States v. Halper* (1989), 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487. The abuse protected here is that against multiple punishments for the same offense, as Taylor has not been subject to a second prosecution. Taylor contends that his disenfranchisement is another punishment for his criminal recklessness convictions.

We noted above, however, that the disqualification here is not punishment but is a regulation of a present situation. The statute does not impose any additional punishment for Taylor's past convictions. Therefore, the trial court correctly concluded that Taylor's disqualification did not violate double jeopardy.

## IV.

About his due process claim, Taylor states, "By one capricious and ill-conceived act of the legislature, Taylor stands to lose a career, without warning and without an ability to be heard." The record shows, however, that Taylor, in fact, had warning and has had an opportunity to be heard in the declaratory judgment proceedings at trial and on appeal.

> The so-called right to hold office is not a natural or inherent right. It is a privilege which arises from the organization of our civil society. If there is nothing in our fundamental law guaranteeing the privilege, then the people, through their official agency, the legislature, may take it away.

*Crampton,* 193 Ind. at 555, 139 N.E. at 362. As the Election Board correctly contends, Taylor had no liberty or property interest in remaining in public office. The trial court correctly decided that Taylor was not deprived of due process.

## V.

Taylor was disqualified for office during his term. He claims that he and the other voters who voted for him were thereby disenfranchised because he was qualified when they cast their votes for a qualified candidate but he was not allowed to fulfill their intention that he serve the full term. Taylor claims that "[t]he State, by enacting 3-8-1-5(3)(B) and the [Election] Board in pressing for its retroactive enforcement proposes to ignore those persons who voted for Taylor and invalidate their decision to vote for him."

Taylor cites two Indiana cases, each of which quote from *People ex rel. v. Clute* (1872), 50 N.Y. 451, 10 Am.Rep. 508:

> The existence of the fact which disqualifies, and of the law which makes that fact operate to disqualify, must be brought home so closely and so clearly to the knowledge or notice of the elector, as that to give his vote therewith indicates an intent to waste it. The knowledge must be such, or the notice brought so home, as to imply a willfulness in acting, when action is in opposition to the natural impulse to save the vote and make it effectual. He must act so in defiance of both the law and the fact, and so in opposition to his own better knowledge, that he has no right to complain of the loss of his franchise, the existence of which he was wantonly misapplied.

*Oviatt v. Behme* (1958), 238 Ind. 69, 74, 147 N.E.2d 897, 900; *State ex rel. Clawson v. Bell* (1907), 169 Ind. 61, 70, 82 N.E. 69, 73. Taylor claims that he was qualified when the voters cast votes for him and remained so for some time. At the election, the voters could not have known or been notified about his subsequent disqualification, as it did not exist. The matter could not have been brought home closely or clearly to the voters so that a vote for him would have indicated an intent to waste that vote or would have implied a willfulness to make it ineffectual because the legislature disqualified him only later when it passed I.C. 3-8-1-5(3)(B).

The paragraph Taylor quotes does not apply to his situation. In *Oviatt,* the trial court erroneously excluded evidence that the voters who voted for Oviatt had voted in good faith and with a belief that he was

qualified. The candidate who had received the next greatest number of votes had brought the action to contest the election on a claim that he, not Oviatt, was the qualified candidate. The court there stated:

Properly qualified voters may not be disfranchised except by their own wilful or deliberate act to the extent that one who did not receive the highest vote case may still be declared elected ...

\* \* \* \* \* \*

Otherwise it could happen that a candidate who received but very few votes would be entitled to an office although a vast majority of the votes were cast by voters believing in good faith another candidate was qualified when, in fact, he was not.

*Oviatt,* 238 at 74–75, 147 N.E.2d at 900.

In the present case, no one contests Taylor's election or claims to have a superior right to his office. Taylor himself brought this declaratory judgment action to determine his right to the office. This case does not require us to apply the principles Taylor quotes because we need not determine whether a candidate with neither a majority nor a plurality of the votes has a right to the office instead of Taylor. To the same effect is the decision in *Clawson,* in which the matter is thoroughly explained. *Clawson,* 169 Ind. 61, 82 N.E. 69. An affirmance of the judgment of disqualification in this case will not place the candidate with the next greatest number of votes in the office. Rather, the vacancy will be filled according to the procedures provided by I.C. 3–13–7.

Taylor further cites Ind. Const. art. II, § 1, as support for his claim of disenfranchisement: "All elections shall be free and equal." Our supreme court has interpreted this portion of the Constitution of Indiana, as follows:

The constitutional provision that "all elections shall be free and equal" means that "the vote of every elector is equal in its influence upon the result to the vote of every other elector."

*Oviatt,* 238 Ind. 69, 75, 147 N.E.2d 897, 900 (quoting *Blue v. State ex rel. Brown*

(1934), 206 Ind. 98, 188 N.E. 583, *overruled on other grounds, Harrell v. Sullivan* (1942), 220 Ind. 108, 40 N.E.2d 115).

Taylor appears to base his contentions in part on an assumption that the legislature directed its actions at voters who voted for Taylor with some sort of intent to disenfranchise them. The reality is otherwise. The legislature directed its actions at the regulation of a present situation, that is, a person is disqualified from holding or being a candidate for an elected office if the person has been convicted of a felony. According to State law, Taylor was disqualified from holding his elected office because he had committed a felony.

■■■■ Neither Taylor nor the voters who voted for him were disenfranchised when Taylor was disqualified. The statute does not fall with unequal weight on voters due to their economic status, *see e.g., Bullock v. Carter* (1971), 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92; and nothing in the record suggests a discriminatory intent with regard to race or gender, *see e.g., Stringer v. Lucas* (N.D.Miss., 1993), 812 F.Supp. 683. Also, Taylor does not allege that the votes of these voters have been diluted by a disparity in the populations of precincts and that their votes are therefore of less value than the votes of voters who did not vote for him. *See e.g., Reynolds v. Sims* (1964), 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; *Wesberry v. Sanders* (1964), 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481. The State has a legitimate interest in the qualifications of candidates, *see e.g., Meeks v. Tallahatchie County* (1987), Miss., 513 So.2d 563, 568; and the same is true about their subsequent disqualifications. Indiana Code Section 3–8–1–5(3)(B) is reasonably necessary to accomplish the legitimate objective of disqualification because it regulates elected officials based upon their general characteristics, an area in which, as noted above, the public considers trustworthiness to be a relevant and basic qualification of persons who serve the citizens as elected officials.

Judgment affirmed.

BAKER, J., concurs.

SULLIVAN, J., concurs in result.