ATTORNEYS FOR APPELLANT CHARLIE WHITE
David M. Brooks
Samantha DeWester
Indianapolis, Indiana

ATTORNEYS FOR APPELLANT INDIANA RECOUNT
COMMISSION
Gregory F. Zoeller
Attorney General of Indiana

Stephen R. Creason
David L. Steiner
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
William R. Groth
Karen Celestino Horseman
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 49S00-1202-MI-73

CHARLIE WHITE, IN HIS INDIVIDUAL
CAPACITY, THOMAS E. WHEELER, II,
GORDON DURNIL, AND BERNARD L. PYLITT,
IN THEIR OFFICIAL CAPACITIES AS MEMBERS
OF THE INDIANA RECOUNT COMMISSION,

*Appellants (Respondents below),*

v.

INDIANA DEMOCRATIC PARTY, THROUGH ITS
CHAIRMAN, DANIEL J. PARKER,

*Appellee (Petitioner below).*

Appeal from the Marion Circuit Court, No. 49C01-1012-MI-55881
The Honorable Louis Rosenberg, Judge

**March 15, 2012**

**Shepard, Chief Justice.**

This case comes before us only after deliberative actions taken by the executive branch, the Indiana Recount Commission, the General Assembly, the court system, and—most

significantly—almost two million Indiana voters who cast their ballots for Secretary of State in November 2010. The Indiana Democratic Party sought to have the winner in the election, Republican Charlie White, declared ineligible to assume office because he had not been registered to vote at the address at which he resided on July 15, 2010, the deadline for certifying candidates for state office. The Indiana Recount Commission dismissed this petition and later denied it, but the Marion Circuit Court reversed.

The appeal before us today does not decide any questions flowing from White's subsequent criminal convictions, but rather whether the Democratic Party's petition was a basis for barring his taking office after winning the election. We hold it was not.

**Facts and Procedural History**

Charlie White married Nicole Mills in September 1998. They resided, together with their child, in the town of Fishers, in Precinct 12, Delaware Township, at a home on Broad Leaf Lane. White served as a member of the Fishers Town Council from a district that included the Broad Leaf house. White voted in the 2004 and 2006 primary and general elections in this precinct.

White and Mills divorced in December 2006, after which Mills continued to live at the Broad Leaf house. White began renting an apartment in Precinct 14 of Delaware Township, on Pintail Drive. In January 2007, White changed his voter registration from the Broad Leaf house to the Pintail apartment. The Pintail apartment was in the district from which White was elected to serve on the Fishers Town Council. That same month, he conveyed his interest in the Broad Leaf house to Mills.

In January 2009, White formed a campaign committee aimed at his candidacy for Secretary of State and filed a Statement of Organization with the Indiana Election Commission, listing the Pintail apartment as his mailing address.

In May 2009, White moved out of the Pintail apartment and into the basement of the Broad Leaf house. The next month, in June, he became engaged to Michelle Quigley, with plans to marry early in 2010 but not to live together until that time. White changed his driver's license address back to the Broad Leaf house in December 2009, received mail at the Broad Leaf house, and testified that he intended for it to be his principal residence until he and Quigley moved into a third residence on Overview Drive, in Fishers (the "Overview condo"). (Recount Commission's Add. at 4.) The Overview condo was not in the district from which White was elected to serve on the Fishers Town Council.

In November 2009, White voted in a special election at the Precinct 14 polling site, indicating in the poll book that his address had changed to the Broad Leaf house. (Recount Commission's Add. at 4.) He testified that he believed he had also changed his voter registration back to Broad Leaf, but this was not the case—on February 22, 2010, he filed an address change with the Board of Voter Registration to effectuate this change. (Recount Commission's Add. at 5.)

White had begun the process of purchasing the Overview condo in September 2009. Through the course of a drawn-out purchasing process, during which White leased the Overview condo from its seller, White listed the Overview condo as his mailing address on multiple loan application documents, tax documents, utility bills, and employment records, with his former address listed as the Broad Leaf house. Pursuant to the terms of his mortgage, White was to occupy the Overview condo no later than April 27, 2010. Quigley and her two children moved into the Overview condo in November 2009, where White's own child also spent one or two nights a week. (Recount Commission's Add. at 9.) White's marriage was delayed from March 2010 to May 2010.

White did not change his voter registration before the May 4, 2010 primary election and voted at the Precinct 12 location for the Broad Leaf house. (Recount Commission's Add. at 12.) After the primary election, on May 11, 2010, White filed his Declaration of Candidacy with the Indiana Republican Party. He submitted his state convention delegate form to the Republican

Party a week later. On both of these forms, he indicated that Broad Leaf was his address. White and Quigley were married on May 28, 2010, and White moved his belongings out of the Broad Leaf house and into the Overview condo in June 2010. (Recount Commission's Add. at 12–13.)

The Indiana Republican Party submitted its certification of nomination—listing White as the party's candidate for Secretary of State—with the Indiana Election Commission on June 22, 2010. It showed White's address as the Overview condo, but the Broad Leaf house as the mailing address. (Recount Commission's Add. at 13.) The deadline for this filing was July 15, 2010. On September 20, 1010, White received a new driver's license showing the Overview condo address.

On September 21, 2010, a resident of Fishers announced a news conference for the next day to reveal White's failure to reside in the Fishers Town Council district from which he had been elected. White resigned his town council position that same day,[1] and on September 22, 2010, he filed a voter registration application showing his address as the Overview condo, with Broad Leaf as his previous address. (Appellee's Add. at 5; Recount Commission's Add. at 13.)

White won the November 2010 general election for Secretary of State, defeating his Democratic Party opponent Vop Osili by more than 300,000 votes.

On November 19, 2010, the chairman of the Indiana Democratic Party, Daniel Parker, filed a verified petition with the Indiana Recount Commission, seeking to contest the results of White's election under the provisions of Indiana Code §§ 3-12-11-1, -3. The petition alleged that White was not qualified to assume the office of Secretary of State because he was not

---

[1] As a result of this course of conduct, White was indicted in Hamilton County on seven criminal counts that included fraudulent voter registration, perjury, fraud on a financial institution, voting outside of precinct, casting a fraudulent ballot, and theft. A jury subsequently found him guilty of six of those seven counts, and his appeal is presently pending.

4

registered to vote at the address at which he resided as of July 15, 2010—the deadline for the Republican Party to file its certificate of nomination—in accordance with Indiana Code § 3-8-1-1(b)(1).

White, now Secretary of State–Elect, moved to dismiss Parker's petition on November 23, 2010, but the Recount Commission denied his motion on December 5, 2010. On December 6, 2010, White renewed his motion. By a 2-1 vote, the Recount Commission granted White's second motion to dismiss.[2]

The Democratic Party timely sought judicial review of this decision in the Marion Circuit Court; that court reversed the dismissal and remanded for a full proceeding on the merits.[3]

The Recount Commission held a hearing and received evidence on the matter on June 21, 2011. On June 28, it issued its findings of fact and conclusions of law, and determined that White was eligible to run as a candidate for Secretary of State in 2010. (Recount Commission's Add. at 1–32.) On December 22, 2011, the Marion Circuit Court again reversed, directing that the Commission declare White ineligible and certify Osili as Secretary of State, in accordance with Indiana Code § 3-12-11-25.[4]

---

[2] This decision seems to have been made by voice vote, with no particularized written findings or conclusions. (Recount Commission's App. at 126–34.)

[3] White and the Recount Commission appealed this ruling to the Court of Appeals and the Indiana Democratic Party sought transfer of jurisdiction to this Court pursuant to Indiana Appellate Rule 56(A). White v. Ind. Democratic Party, 946 N.E.2d 1171 (Ind. 2011). We assumed jurisdiction and dismissed White and the Commission's appeal because the trial court's order did not constitute a final judgment. Id. at 1172.

[4] This Code section previously provided that if the Recount Commission found a candidate ineligible to serve in office, then the runner-up would be declared the winner. Ind. Code § 3-12-11-25 (2005). But during the 2011 legislative session, and while this litigation was pending, the General Assembly added language providing that if this circumstance arose again, the vacancy would be filled by gubernatorial

The Recount Commission and White timely filed appeals, and both the Commission and the Indiana Democratic Party sought transfer of jurisdiction to this Court. We accepted the appeals. We now affirm the decision of the Recount Commission.

## I.    Statutory Framework for Challenging the Election of State Officers

Pre-election challenges to a candidate's eligibility are governed by Title 3, Article 8 of the Indiana Code. See Ind. Code §§ 3-8-8-1 to -8 (2005 & Supp. 2011). A challenge under these provisions "must be filed with the election division not later than noon seventy-four (74) days before the date of the general election at which a candidate to the office is to be elected." Ind. Code § 3-8-8-3(b).

An appeal may lie from the Election Commission's decision, but regardless of where the matter lies, at noon sixty days before the general election the challenge terminates and the challenged candidate's name may not be removed from the ballot, nor may a replacement name be submitted. Ind. Code §§ 3-8-8-6, -7(a). Any votes cast for that candidate will be reported under that name. Ind. Code § 3-8-8-7(a)(4).

If the challenged candidate is later found to have been "not qualified to be elected to the office," the statutes treat the matter as if "[a]n eligible candidate of the same political party, if any, as the ineligible candidate had been elected," and "[a] vacancy in the office occurred after the election." Ind. Code § 3-8-8-8(b). In such an instance, "[t]he vacancy in the office shall be filled as otherwise provided by law." Ind. Code § 3-8-8-8(c).

---

appointment of an individual from the same political party as the ineligible winner. Act of May 13, 2011, P.L. 225-2011, § 78, 2011 Ind. Acts 3276–77; Ind. Code § 3-12-11-25 (Supp. 2011).

The Democratic Party, however, filed its petition challenging White's election pursuant to Title 3, Article 12, which provides a remedy for the state chairman of a candidate's party to contest "the nomination or election of a candidate" by filing a petition within seventeen days after election day. Ind. Code § 3-12-11-1(b)(2) (2005); see also Ind. Code § 3-12-11-2 (2005). In addition to various administrative requirements, such a petition must state as the grounds for the contest that

> the petitioner in good faith believes that one (1) or more of the following occurred:
>
> (A) The person declared nominated or elected does not comply with a specific constitutional or statutory requirement set forth in the petition that is applicable to a candidate for the office.
>
> (B) A mistake was made in the printing or distribution of ballots used in the election that makes it impossible to determine which candidate received the highest number of votes cast in the election.
>
> (C) A mistake occurred in the programming of an electronic voting system, making it impossible to determine the candidate who received the highest number of votes.
>
> (D) An electronic voting system malfunctioned, making it impossible to determine the candidate who received the highest number of votes.
>
> (E) A deliberate act or series of actions occurred making it impossible to determine the candidate who received the highest number of votes cast in the election.

Ind. Code § 3-12-11-3(a), (b)(4) (2005). In the event that an election contest is filed alleging the ineligibility of a candidate, the Recount Commission "shall make a final determination concerning the eligibility of the candidate for nomination or election to the office." Ind. Code § 3-12-11-18(b) (2005).

The Democratic Party filed its challenge under Section 3-12-11-3(b)(4)(A) by alleging that White, "[t]he person declared nominated or elected," did "not comply with a specific

constitutional or statutory requirement set forth in the petition that is applicable to a candidate for the office." Ind. Code § 3-12-11-3(b)(4)(A). The requirement in question was Indiana Code § 3-8-1-1(b)(1) (2005), which states, "A person is not qualified to run for . . . a state office . . . unless the person is registered to vote in the election district the person seeks to represent not later than the deadline for filing the declaration or petition of candidacy or certificate of nomination." White had not done so, said the challenge.

## II.    Indiana Law Strongly Disfavors Post-Hoc Disenfranchisement of Voters

The Indiana Constitution guarantees that "[a]ll elections shall be free and equal." Ind. Const. art. 2, § 1. Consistent with this guarantee, this Court has always been wary of overturning the will of the voters who have freely and willingly cast their ballots. See, e.g., Burke v. Bennett, 907 N.E.2d 529 (Ind. 2009) ("This application of the Indiana disqualification statute is consistent with the longstanding respect for the right of the people to free and equal elections . . . and the reluctance of this Court to remove from office a person duly elected by the voters."). We liberally construe the statutes governing post-election contests "'in order that the will of the people in the choice of public officers may not be defeated by any merely formal or technical objections.'" Pabey v. Pastrick, 816 N.E.2d 1138, 1148 (Ind. 2004) (quoting Tombaugh v. Grogg, 146 Ind. 99, 103, 44 N.E. 994, 995 (1896)).

Even where facts are alleged that might if later proven render a candidate ineligible, "[t]he existence of the fact which disqualifies, and of the law which makes that fact operate to disqualify, must be brought home so closely and so clearly to the knowledge or notice of the elector, as that to give his vote therewith indicates an intent to waste it." Oviatt v. Behme, 238 Ind. 69, 74, 147 N.E.2d 897, 900 (1958) (quoting People ex rel. Furman v. Clute, 50 N.Y. 451 (1872)). Those voters who are lawfully qualified to participate in our democratic process "may not be disenfranchised except by their own willful or deliberate act to the extent that one who did not receive the highest vote cast may still be declared elected." Id. at 74–75, 147 N.E.2d at 900.

8

The Recount Commission had these principles in mind when it concluded that White was properly qualified to assume the office of Secretary of State. (Recount Commission's Add. at 15–16.) The question before us is therefore whether this action of the Commission was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "substantially prejudiced" the Indiana Democratic Party, Ind. Code § 3-12-10-18 (2005), such that we should judicially nullify the votes of the hundreds of thousands of Indiana citizens who cast their ballots for White. We conclude that it was not, because the Indiana Democratic Party's challenge was untimely.

The recount and contest procedures of Chapter 11 create two periods of time in which to bring a petition for a contest or recount: one immediately following a primary election and another immediately following a general election.[5] This window closes for a losing candidate fourteen days after the election and seventeen days after the election for the losing candidate's political party. Ind. Code § 3-12-11-2(a)–(b).

A challenge brought in the intervening time between these two periods must comply with the provisions addressing the removal of a candidate's name from the ballot. See Ind. Code §§ 3-8-8-1 to -8. These provisions provide for a challenge "(1) questioning the qualification of a candidate to seek the office; and (2) setting forth the facts known to the voter concerning this question." Ind. Code § 3-8-8-3(c). As we detailed above, the challenge must be filed with the Election Commission no later than the seventy-fourth day before the general election. However,

_____

[5] See Ind. Code § 3-12-11-1(a) ("Any candidate: (1) in a presidential primary election; (2) for nomination to a federal, state, or legislative office in a primary election; or (3) for a federal, state, or legislative office; is entitled to have the votes cast for that office recounted or to contest the nomination or election of a candidate . . . ."); Ind. Code § 3-12-11-2(a) ("A candidate who desires: (1) a recount of votes cast for a nomination or election . . . or (2) to contest a nomination subject to this chapter or the election of a state office other than governor or lieutenant governor; must file a verified petition . . . not later than noon fourteen (14) days after election day."); Ind. Code § 3-12-11-3(b)(4) ("That the petitioner in good faith believes that one (1) or more of the following occurred: (A) The person declared nominated or elected does not comply with a specific constitutional or statutory requirement set forth in the petition that is applicable to a candidate for the office.").

these same statutes also expressly provide for the possibility that a pre-election challenge cut off by the sixty-day rule may be revived or continued after the election and operate to disqualify an elected candidate. See Ind. Code § 3-8-8-8.

Here, the Indiana Democratic Party filed a post-election challenge pursuant to Section 3-12-11-3(b)(4), alleging that White violated Section 3-8-1-1(b) in that he was not "registered to vote in the election district [he sought] to represent," because on July 15, 2010, he was registered to vote at the Broad Leaf address, not the Overview condo.

Of course, the Democratic Party could not have brought this claim in the post-election period after the May 2010 primary election because when that time limit expired, White still had until July 15th to comply with the requirements of Section 3-8-1-1. What remains, then, is whether the claim was still valid under Section 3-12-11-2 when brought following the general election, or if it must have been brought earlier under Section 3-8-8-1.

This question is not new to us. See Burke, 907 N.E.2d at 531–33. In Burke, we dealt with a post-election disqualification challenge brought in a local election pursuant to Ind. Code § 3-12-8-6(a)(3)(A), which parallels the language of Section 3-12-11-3(b)(4)(A). Id. at 531. The challenge rested on an allegation that the winning candidate could not assume office because his prior employment was connected with activities financed at least in part by the U.S. government. Id. at 530–31. This is forbidden by federal law under the Little Hatch Act, and is likewise a disqualification under Indiana's election statutes. See id.; see also 5 U.S.C. § 1502 (2006); Ind. Code § 3-8-1-5(c)(6) (2005 & Supp. 2011) ("A person is disqualified from assuming or becoming a candidate for an elected office if . . . the person is subject to 5 U.S. C. 1502 (the Little Hatch Act) . . . ."). It was accepted, though, that at the time the winning candidate assumed office, he would no longer be employed in his prior position. Burke, 907 N.E.2d at 532. We affirmed the trial court's decision to uphold the election results. Id. at 533.

As we pointed out, the disqualification challenge for a Little Hatch Act violation could properly be brought before or after the election—but "[t]he point in time at which the statute's

disqualifiers are to be assessed depends upon whether the challenger is using the statute to prevent another person from being a candidate or from assuming office." Id. at 532. In either case, however, the language of the disqualification provision at issue in Burke "focuses on current or prospective status as the basis for disqualification," whereas "several of the statute's other provisions clearly refer to a person's past conduct as grounds for disqualification." Id.

So in addition to the election winner's change in employment being dispositive, we viewed the question as not "whether a successful candidate was subject to the Act or had been in violation of it when the candidate became or remained a candidate." Id. (emphasis in original). Instead, the question was "whether the election winner is subject to the Act and whether he would violate it by becoming or remaining a candidate." Id. (emphasis in original). Because that necessarily required proof that the individual "would, in the future, violate the Act by becoming or remaining a candidate," we found the disqualification was inapplicable in the post-election contest to establish a candidate's ineligibility because from the time the challenge was filed until the date of assumption of office, the defendant was no longer a candidate. It was simply impossible to find that the winner "is subject to" and "would violate" the Little Hatch Act by "becoming or remaining a candidate." Id. (emphasis in original).

We recognized in Burke that our approach would restrain the application of the Little Hatch Act disqualification provision in post-election contests, but that it would not "impede the pre-election application of subsection 5(c)(6) to challenge a person's qualifications to be a candidate for elected office." Id. at 532. A similar approach is merited here for several reasons.

First, the language of Section 3-12-11-3(b)(4)(A) speaks in the present tense, "does not comply," which suggests that the claim must be analyzed as of the time that it is brought. In essence, however, the Democratic Party seeks a reading of Section 3-12-11-3(b)(4)(A) that permits a challenge when "[t]he person declared nominated or elected" did not "comply with a specific constitutional or statutory requirement set forth in the petition that is applicable to a candidate for the office." But unlike others, this subsection is not written to encompass a past-tense violation—only a current and ongoing one. Cf. Ind. Code §§ 3-12-11-3(b)(4)(B) ("A

11

mistake <u>was made</u>"), -3(b)(4)(C) ("A mistake <u>occurred</u>"), -3(b)(4)(D) ("An electronic voting system <u>malfunctioned</u>"), -3(b)(4)(E) ("A deliberate act or series of actions <u>occurred</u>") (emphasis added in all).

Similarly, the specific statutory requirement at issue here is concerned with the current status of the candidate. It provides that "A person <u>is not qualified</u> to run . . . unless the person <u>is registered</u> to vote in the election district the person <u>seeks to represent</u>." Ind. Code § 3-8-1-1(b). As we also noted with <u>Burke</u>'s requirement, this contrasts with other disqualifying provisions that are aimed specifically at past conduct. <u>See</u> Ind. Code § 3-8-1-5(c)(1) (2005 & Supp. 2011) (disqualification if "the person gave or offered a bribe, threat, or reward to procure the person's election"), -5(c)(3) (disqualification for felony convictions), -5(c)(4) (disqualification if "the person has been removed" from office); <u>see also</u> <u>Burke</u>, 907 N.E.2d at 532.

Viewed through that lens, when the challenge was filed post-election White <u>was</u> correctly registered at his place of residence—the Overview condo—in the election district he sought to represent—i.e., the State of Indiana. And the next deadline by which he would have had to accomplish this would not occur for several more years—when or if he had to file a declaration or petition of candidacy or certificate of nomination for the 2014 elections.

But further, the statutes governing pre-election document filings—such as the certificate of nomination filed by the Indiana Republican Party and White's Declaration of Candidacy—also provide an express procedure through which a voter may challenge the validity of those filings within the time limits for pre-election challenges. <u>See</u> Ind. Code § 3-8-1-2 (2005). Under this provision, a registered voter within the candidate's election district may file a sworn statement with the election division "(1) questioning the eligibility of a candidate to seek the office; and (2) setting forth the facts known to the voter concerning this question." Ind. Code § 3-8-1-2(c). The Election Commission must then determine the validity of the questioned filing, Ind. Code § 3-8-1-2(f), and shall deny that filing if it determines that "the candidate has not complied with the applicable requirements for the candidate set forth in the Constitution of

the United States, the Constitution of the State of Indiana, <u>or this title</u>," Ind. Code § 3-8-1-2(g) (emphasis added). This, of course, includes the grounds for the challenge here.

This is the route that would have been open to the Indiana Democratic Party in this instance. To be sure, the allegations about White found their way into the press after the deadlines had passed for pre-election challenges that seek to remove a candidate's name from the ballot. <u>See</u> Ind. Code §§ 3-8-8-3(b), -7(a). At oral argument, however, the Commission reasonably observed that the exercise of more due diligence by the Democratic Party might have made a pre-election challenge possible. After all, none of the filings at issue—not White's voter registration, not the Certificate of Nomination, nor White's Declaration of Candidacy—were confidential or sealed. In fact, the discrepancy was discovered by a private citizen, presumably acting without the aid or benefit of a statewide party's resources and experience, and the Democratic Party has pointed us to nothing in their briefs to demonstrate the impossibility of their discovering White's registration issues at an earlier date.

Our conclusion is that the Code places a burden on political campaigns to investigate and vet their opposition before the pre-election time limitations expire, but that is better than the alternative: that a challenger might ignore a known (or knowable) disqualification challenge before the election, wait to see who won at the polls, and then seek to set aside the results of the democratic process. Such a result is inconsistent with free elections and respect for voters' expressed preferences.

Here, the allegations of White's registration impropriety arose before the election and were made public by private citizens, the media, and by the Osili campaign and by the Democratic Party. It is likely that the average voter was aware that there were concerns about White's voter registration history at the time of the election, but we will not, on the basis of the present petition, judicially disenfranchise voters who went to the polls aware of what were at that moment only allegations. The fact that criminal charges were filed after the election and resulted in convictions (appeals still pending) does not alter that conclusion.

**Conclusion**

We therefore reverse the decision of the trial court and affirm the Commission's dismissal.


Sullivan, Rucker, and David, JJ., concur.
Dickson, J., concurs in result with separate opinion.

**Dickson, J., concurring in result.**

I agree that it was correct to dismiss the petition for election contest and thus join my colleagues in the Court's decision to reverse the trial court and affirm the Commission, but my conclusion is based on different grounds.

**A.**

The Indiana Democratic Party brought this petition, contesting the election of Charlie White, under Indiana's statutory election contest procedures which permit a challenge when a person elected "does not comply with a specific constitutional or statutory requirement . . . applicable to a candidate," Ind. Code § 3-12-11-3(b)(4)(A).  The petition asserts a violation of Indiana Code Section 3-8-1-1(b) requiring White to be "registered to vote."[1]  The Court concludes that such a challenge cannot be brought after the election is held because the Court interprets the applicable election contest statutes to require such a challenge to be brought before the election.

I do not share the Court's view that the applicable statute, Indiana Code Section 3-12-11-3(b)(4)(A), does not permit a post-election challenge.  To the contrary, the election contest

---

[1] Ind. Code § 3-8-1-1(b) provides:
(b) A person is not qualified to run for:
      (1) a state office;
      (2) a legislative office;
      (3) a local office; or
      (4) a school board office;
unless the person is registered to vote in the election district the person seeks to represent not later than the deadline for filing the declaration or petition of candidacy or certificate of nomination.

1

statute explicitly envisions a post-election challenge. It expressly permits persons to contest the "*election* of a candidate," Ind. Code § 3-12-11-1(a) (emphasis added)—i.e., the person "declared . . . elected," Ind. Code § 3-12-11-3(b)(4)(A)—up to 14 "days *after* election day," Ind. Code § 3-12-11-2(a) (emphasis added).[2] The plain language of the statute allows a petitioner to challenge, as a ground for contesting the election of a candidate, whether the person elected failed to comply with a "statutory requirement . . . *applicable to a candidate*." Ind. Code. § 3-12-11-3(b)(4)(A) (emphasis added). I find that such language reflects a clear legislative intent that the election contest statute authorizes a challenge to an *elected* candidate's eligibility to have been a *candidate* in the first instance. Thus, I cannot join the Court's view that the use of the present tense in "does not comply" operates to nullify explicit contrary statutory language and clear intent.

In addition, I do not find <u>Burke v. Bennett</u>, 907 N.E.2d 529 (Ind. 2009), to be relevant to today's case. In <u>Burke</u>, the election was contested on grounds that a person was ineligible to be a candidate under the federal Little Hatch Act only if the candidate "*would* violate it by *becoming* or *remaining* a candidate." 907 N.E.2d at 532. We held that this requirement applied only to a "future" violation of the Act and could not be used retrospectively. *Id.* Thus, we found that Bennett was not disqualified under the statute because "From the time Burke filed his election contest action to Bennett's anticipated assumption of the position of Mayor, it is undisputed that Bennett was no longer a candidate." *Id.* The language of the Little Hatch Act, which was determinative to our decision in <u>Burke</u>, is not implicated in the present case.

---

[2] Chapter 11 also permits the state chairman of a candidate's political party to bring such a challenge when the candidate does not file a petition by the deadline. Ind. Code § 3-12-11-1(b). In such instances, a state chairman must file the petition within 17 days "after election day." Ind. Code § 3-12-11-2(b).

**B.**

It is my view that this statutory provision, to the extent that it imposes a statutory requirement for candidacy for the office of Secretary of State, conflicts with the Indiana Constitution and therefore cannot serve as a basis upon which to challenge a candidate's eligibility.

The Indiana Constitution declares:

> There shall be elected, by the voters of the state, a Secretary, an Auditor and a Treasurer of State, who shall, severally, hold their offices for four years. They shall perform such duties as may be enjoined by law; and no person shall be eligible to either of said offices, more than eight years in any period of twelve years.

Ind. Const. art. 6, § 1. As to these offices, this provision renders a person unqualified for the office if the term of such office would result in the person serving more than eight years in any period of twelve years. It does not impose any other qualification requirement for the office nor can one be found elsewhere in the Constitution. *See generally* Ind. Const.

The Constitution does establish more extensive eligibility requirements for members of the General Assembly,[3] the Governor and Lieutenant Governor,[4] Justices of the Supreme Court

---

[3] "No person shall be a Senator or a Representative, who, at the time of his election, is not a citizen of the United States; nor any one who has not been for two years next preceding his election, an inhabitant of this State, and, for one year next preceding his election, an inhabitant of the district whence he may be chosen. Senators shall be at least twenty-five, and Representatives at least twenty-one years of age." Ind. Const. art. 4, § 7.

[4] "The executive power of the State shall be vested in a Governor. He shall hold his office during four years, and shall not be eligible more than eight years in any period of twelve years." Ind. Const. art. 5, § 1.

"No person shall be eligible to the office of Governor or Lieutenant Governor, who shall not have been five years a citizen of the United States, and also a resident of the State of Indiana during the five

3

or Judges of the Court of Appeals,[5] and local prosecuting attorneys.[6] In each instance, the Constitution prescribes in detail the qualifications for a person to be elected or appointed as an officer in the respective capacity. For each officer, the Constitution establishes requirements implicating citizenship, duration of residency in the official district, age, or professional experience. Such an extensive prescription of qualifications for some offices and not others belies any notion that the Framers' omission of additional eligibility criteria for persons seeking the offices of Secretary, Auditor, or Treasurer of State was inadvertent. It strongly suggests that the Framers were keenly focused on the issue. Indeed, the Constitution does not prescribe an extensive set of qualifications for other constitutionally established officers, whose duties are similarly administrative in nature. Neither the provisions providing for a Superintendent of Public Instruction nor an Adjutant General prescribe any eligibility criteria for persons holding

---

years next preceding his election; nor shall any person be eligible to either of the said offices, who shall not have attained the age of thirty years." Ind. Const. art. 5, § 7.

"No member of Congress, or person holding any office under the United States or under this State, shall fill the office of Governor or Lieutenant Governor." Ind. Const. art. 5, § 8.

[5] "To be eligible for nomination as a justice of the Supreme Court or Judge of the Court of Appeals, a person must be domiciled within the geographic district, a citizen of the United States, admitted to the practice of law in the courts of the State for a period of not less than ten (10) years or must have served as a judge of a circuit, superior or criminal court of the State of Indiana for a period of not less than five (5) years." Ind. Const. art. 7, § 10.

"Tenure of Justices of Supreme Court and Judges of the Court of Appeals. A justice of the Supreme Court or Judge of the Court of Appeals shall serve until the next general election following the expiration of two years from the date of appointment, and subject to approval or rejection by the electorate, shall continue to serve for terms of ten years, so long as he retains his office. In the case of a justice of the Supreme Court, the electorate of the entire state shall vote on the question of approval or rejection. In the case of judges of the Court of Appeals the electorate of the geographic district in which he serves shall vote on the question of approval or rejection.

Every such justice and judge shall retire at the age specified by statute in effect at the commencement of his current term." Ind. Const. art. 7, § 11.

[6] "There shall be elected in each judicial circuit by the voters thereof a prosecuting attorney, who shall have been admitted to the practice of law in this State before his election, who shall hold his office for four years, and whose term of office shall begin on the first day of January next succeeding his election." Ind. Const. art.7, § 16.

4

such offices. *See* Ind. Const. art. 8, § 8 ("There shall be a State Superintendent of Public Instruction, whose method of selection, tenure, duties and compensation shall be prescribed by law."); *id.* art. 12, § 3 ("There shall be an Adjutant General, who shall be appointed by the Governor."). Though not dispositive of the issue, it would appear that the Framers selectively applied eligibility qualifications, at least in part, depending on the character and function of the particular office at issue.

Moreover, the Constitution does not grant the General Assembly any express power to modify the qualifications for a constitutionally prescribed office. *See generally* Ind. Const. Neither can such authority be implied from the grant of general legislative power provided for in Article 4, Section 1 ("The Legislative authority of the State shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives.") because the Constitution expressly delineates the qualifications to be Secretary of State. *Cf.* League of Women Voters of Ind., Inc. v. Rokita, 929 N.E.2d 758, 767 (Ind. 2010) (holding that the General Assembly lacks any power to modify the "substantive qualification[s] to the right to vote assured by Article 2"); Morris v. Powell, 125 Ind. 281, 287–88, 25 N.E. 221, 223 (1890) ("That, when the people by the adoption of the constitution, have fixed and defined in the constitution itself what qualifications a voter shall possess to entitle him to vote, the legislature cannot add an additional qualification, is too plain and well recognized for argument or to need the citation of authorities. The principle is elementary that when the constitution defines the qualification of voters, that qualification cannot be added to or changed by legislative enactment."). In League of Women Voters of Ind., Inc., while recognizing the principle that the General Assembly may not modify the substantive voter qualifications prescribed in the Indiana Constitution, this Court held that the challenged provisions in the Voter ID Law were permissible election regulations and not unconstitutional additional substantive qualifications for voting. 929 N.E.2d at 767. In contrast, the statutory prerequisite that a candidate for Indiana Secretary of State be a registered voter imposed by Indiana Code Section 3-8-1-1(b) is a substantive qualification for office, not a

5

mere procedural regulation governing the implementation of constitutionally valid eligibility qualifications. Unlike the requirement that a voter present an ID when voting to verify that they satisfy the voting qualifications prescribed in our Constitution, the statutory requirement that a candidate for Secretary of State be registered to vote requires an eligibility qualification absent from the Constitution.

For this reason, I conclude that the legislature's attempt to impose an additional eligibility qualification—requiring a candidate for this position to be "registered to vote," Ind. Code § 3-8-1-1(b)—is violative of the Indiana Constitution and thus cannot serve as a basis upon which to contest a candidate's eligibility for election to the office of Secretary of State. The election contest petition was thus properly dismissed.